# Plaintiff's 5/12/06 deposition, with exhibits
## *Part 3*

**Appleton Wire Division**
Post Office Box 11066
Montgomery, Alabama 36111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582



# I Understand

➢ I have viewed the "In This Together" video and have received the printed handbook.

➢ I have read and I understand my company's policy statements entitled:

**WORKPLACE HARASSMENT, THE BASICS**
**THE ANTI-HARASSMENT POLICY**
**THE SEXUAL HARASSMENT POLICY**

➢ I understand what harassment is and what I should do if I feel I am being harassed.

➢ I understand that I will not be retaliated against for reporting harassment or assisting in a harassment investigation

_Don Davis_
**Name**

_1-10 - 2001_
**Date**

**DEFENDANT'S EXHIBIT**

Davis   4

ALBANY/DAVIS
D 0134

**Appleton Wire Division**
Post Office Box 11066
Montgomery, Alabama 36111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582



## The Anti - Harassment Policy

Our company is committed to maintaining a work environment that is free from discrimination. In keeping with this commitment, we will not tolerate harassment of our employees by any supervisor, co-worker, vendor, or customer of this company. Harassment consists of unwelcome conduct, whether verbal, physical, or visual, that is based on a person's protected status, such as sex, color, race, religion, national origin, age, physical or mental disability, or other protected group status. Our company will not tolerate harassing behavior that affects tangible job benefits, that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile, or offensive working environment. Such harassment may include, for example, jokes about another person's protected status, kidding, teasing, or practical jokes directed at a person based upon his or her protected status. All employees are responsible to help assure that we avoid harassment. If you feel that you have experienced or witnessed workplace harassment, you are to notify the human resource manager, your department head, or your supervisor. Our company forbids retaliation against anyone for reporting harassment, assisting in making a harassment complaint, or cooperating in a harassment investigation. If you feel you have been retaliated against, you are to notify the human resource manager, your department head or your supervisor. It is our company's policy to investigate all such complaints thoroughly and promptly. To the fullest extent practicable, the company will keep complaints and the terms of their resolution confidential. If an investigation confirms that a violation of the policy has occurred, the company will take corrective action, including discipline, up to and including immediate termination of employment.

ALBANY/DAVIS
D 0130



**Appleton Wire Division**
Post Office Box 11066
Montgomery, Alabama 36111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582

# The Sexual Harassment Policy

Our company fully supports laws and regulations designed to prevent sexual harassment within the work environment. Sexual Harassment consists of unwelcome sexual conduct, sexual advances, requests for sexual favors, and other visual, verbal, or physical conduct of a sexual nature that is a term or condition of employment. It is sexual harassment when submission to or rejection of such conduct is used as a basis for employment decisions, such as hiring, scheduling, or continued employment. It is also sexual harassment when such conduct unreasonably interferes with an individual's job performance or creates an intimidating, hostile, or offensive work environment. Sexual harassment will not be tolerated and will result in disciplinary action, including possible termination. If you feel that you are being subjected to sexual harassment, promptly contact your immediate supervisor, your supervisor's supervisor, the human resource manager, or any appropriate corporate officer or company representative.

ALBANY/DAVIS
D 0131

**Appleton Wire Division**
Post Office Box 11066
Montgomery, Alabama 36111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582



## Workplace Harassment, The Basics

Harassment is not always intentional, and doesn't have to be intentional to be illegal. Men can harass men, women can harass women, women can harass men, and men can harass women. It's the behavior that counts, not the gender of the participants. A person can feel harassed even if he or she is not the intended target of the behavior. While not all harassing behavior meets the standard of illegal conduct, any work place harassment is inappropriate and should not be tolerated. If you feel harassed at work or you are aware of incidents of workplace harassment, you have a right and responsibility to address the situation. You may confront the harasser if you feel comfortable doing so, or report the harassment to your manager or an appropriate human resource manager. If you report an incident of harassment, the organization will conduct a fair, discreet investigation, and appropriate corrective action will be taken. It is illegal to retaliate in any way against and employee for complaining about or reporting workplace harassment.

ALBANY/DAVIS
D 0132



# IN THIS
# together ™
### An Engaging Look at
### Harassment and Respect



# Employee Handbook
### Difficult Questions — Practical Answers

ALBANY/DAVIS
D 0108

Media Partners™
1-800-408-5657

It is a violation of the law to copy any part of the videotape or related textual materials in this package. Use of these materials is permitted only in accordance with the limitations contained in the licensing agreement available from the publisher.

© 2000 Media Partners Corporation

All rights reserved under International and Pan-American Copyright Conventions. No part of this book may be reproduced in any form or by any means, electronic or mechanical, including photocopying, unless specifically permitted in the text or by permission in writing from the publisher. All inquiries should be addressed to Media Partners Corporation, 911 Western Avenue, Suite 306, Seattle, Washington 98104, 1-800-408-5657, MPCfilms.com.

Printed in the United States of America.

ALBANY/DAVIS
D 0109

# IN THIS together™

### An Engaging Look at Harassment and Respect

○ **Have you ever been stuck for the right words to say in an uncomfortable situation?**

○ **Have you ever caught a co-worker staring at your body?**

○ **Have you ever been the target of ugly rumors or gossip?**

This handbook won't solve every problem for you, but it might help you find the right words to say, avoid some common pitfalls, or give you the courage to take action toward a kinder and more respectful workplace.

**\*IMPORTANT\***

Even though this handbook has been edited by a lot of very wise people, it's still just helpful suggestions. It's not the law.

# contents

## MOODS, PERSONAL ISSUES & ATTITUDES

How do I leave my bad mood at the door? — 1

How do I deal with a grumpy co-worker? — 1

How do I deal with an overly cheerful co-worker? — 1

How do I deal with negative, sarcastic and whining co-workers? — 2

What should I do if someone breaks down in front of me? — 2

What do I say if someone loses a loved one? — 3

What if someone's "significant other" leaves them? — 3

## GOSSIP, PRIVACY & NOSY CO-WORKERS

How do I stop someone from telling me gossip? — 4

What if I am the target of gossip? — 4

What if my boss is a gossip? — 5

What if it's not gossip, it's a fact? — 5

Should I tell a co-worker if they are the target of gossip? — 5

What if I find out that a co-worker is doing something unsafe
or illegal at work? — 5

How do I get someone to stop asking me about something
that I regret I ever shared? — 6

What if a co-worker insists on telling me all of their troubles? — 6

What if a co-worker always asks me what I get paid? — 6

## PROMISES & BROKEN PROMISES

How do I say "no" to a request without making someone mad? — 7

What if I can't get something done on time that I promised? — 8

What if my boss doesn't do what they say they will? — 8

Should I cover for a co-worker who makes me look bad? — 8

What do I say to a co-worker who always asks me for help
on things that should be their responsibility? — 9

## PICTURES, JOKES & LANGUAGE

What if someone complains about the language
I use and no one else cares? — 10

What if a co-worker makes a racial slur or joke? — 10

What if a co-worker makes a sexual slur or joke? — 10

What if a co-worker calls me an offensive name? — 11

What if someone gives me a nickname I hate? — 11

How do I tell someone to stop swearing? — 12

What if my boss says demeaning things about people? — 12

What if someone displays an offensive or suggestive picture? — 12

What if someone sends me an offensive or suggestive e-mail? — 13

## SEXUAL ATTRACTION & SEXUAL HARASSMENT

What if I want to ask a co-worker out? — 14

What if a co-worker I'm no longer dating starts spreading rumors? — 14

What if a co-worker uses sexual innuendoes as a joke? — 15

What if a co-worker always gets too close or touches me? — 15

What if a co-worker is always looking at my body? — 16

What if my boss is always looking at my body? — 16

What if a co-worker comes on to me outside of work? — 16

What if a customer comes on to me? — 17

## TOLERANCE & DIFFERENCES

What if someone asks me if I'm gay? — 18

What if someone makes fun of my English or my accent? — 18

What if I can't understand a co-worker's English? — 19

What if someone is always mean to me? — 19

What if someone is always trying to get me into a political
or religious discussion? — 19

What if someone makes fun of my personal style? — 20

## COURTESY & SMALL KINDNESSES

What if someone never says "good morning?" — 21

What if someone never says "thank you?" — 21

What if there's no time for "please and thank you?" — 22

What if my boss is abrupt and rude? — 22

What if a co-worker acts as if they are my boss? — 23

How do I stop a feud? — 23

## HARASSMENT COMPLAINTS & POLICIES

Am I responsible if I just witness harassment, but I'm not part of it?  24

What if I'm threatened about "squealing?"  24

Can I remain anonymous if I file a complaint?  25

What exactly happens when a complaint is filed?  25

What are the basics of harassment?  26

What is my company's policy on harassment?  26

What is my company's policy on sexual harassment?  27

Opinion Survey  28

---

# moods, personal issues & attitudes



## How do I leave my bad mood at the door?

**Decide that you're going to.**

It really is that simple—and that hard. But if you're a strong person, And even when you act. But before you can change your emotions instantly, you can control the way you act. So before you come in the door, make a conscious decision not to take any of the stresses of your personal life out on the people you work with.

**Here are a couple of tips that might help:**

○ **Before you get out of the car or off the bus, write down the stuff in your personal life that you can't do anything about during work hours. Leave it there until you can give it the time it deserves—after work.**

○ **Simply spend a few extra minutes in the parking lot before you come in. Listen to music or flip through a magazine.**

If your bad mood is not about home, but work, and you really do have a problem that you need to address with a co-worker, don't just sabotage them with your attitude; talk to them about it.

## How do I deal with a grumpy co-worker?

**Give them a break and don't assume that their grumpiness is about you.**

Everyone has things going on outside of work, so if one of your co-workers has an occasional bad day, just let it go. If it looks like it's becoming an

everyday thing or seriously affects the way you work together, you can check it out in a nonthreatening way by saying something like, "It seems like you've been under some stress lately. I just want to make sure that if you're having a problem with me, you'll let me know, okay?"

## How do I deal with an overly cheerful co-worker?

*Give them a break and be glad that you're not dealing with a grump.*

Maybe you're not a morning person. Maybe your peppy co-worker's cheerful greeting makes you want to scream. If that's your only problem, it's your problem, not theirs. Sometimes people annoy us, just because. So, if it's not actually hurting you, just be polite and move on. After awhile, if someone continues to happily chat about things unrelated to work, you can always say, *"I really need to concentrate on this project right now."*

## How do I deal with negative, sarcastic and whining co-workers?

*Good luck.*

You need to realize that you can't change or fix people. They only change when they want to. The problem with these kind of co-workers is that they might be tempted to be sarcastic back. Be careful. You can drag you into the same rut that they are stuck in. Be careful. You you're always so positive." Or "Would you like a little cheese with that whine?" It won't work, but you might feel better.

## What should I do if somebody breaks down in front of me?

*Be sympathetic and give them their privacy.*

It's a helpless feeling to see somebody crying. We often feel the obligation to do something that will help the person feel better. That's appropriate with friends and family. But in the workplace, you are not equipped or expected to be anyone's counselor. If somebody breaks down in front of you, you can acknowledge their situation by saying something like, "I'm sorry you're so upset. Is there somebody you can talk to?" or "I'm sorry— I'll give you some privacy."

## What do I say if someone loses a loved one?

**"I'm sorry...."**

In situations like this, we sometimes find ourselves at a loss for words, thinking that we should have something profound to say. Sometimes we feel so awkward that we don't say anything at all. Do say something, it's human kindness to acknowledge such a profound event in someone's life. But it's OK to keep it simple: *"I'm really sorry to hear about your mom."* That's all a co-worker needs to hear to let him or her know that you're sorry for their loss.

## What do I say if someone's "significant other" leaves them?

*Nothing—unless your co-worker shares this information with you personally.*

If someone tells you that their spouse or lover has left or is leaving, a simple "I'm really sorry" is enough to let them know that you feel bad for their situation. You may feel like offering advice or consoling, but unless you're very close, it might actually be making things worse. Saying anything negative about their partner isn't helpful either, especially if they patch things up.

IN THIS **toge** er

' THIS together

# gossip, privacy & nosy co-workers

## How do I stop someone from telling me gossip?

***Stick your fingers in your ears and start singing.***

If that doesn't work, interrupt and say something like, *"You know what? I would never listen to something negative about you, and this is none of my business either."* The real problem comes if you've been happy to gossip in the past and now seem "holier than thou." In that case you might need to say something like, *"You know what? I gossip too much and it's starting to bother me. It would help me a lot if you took me out of the loop, OK?"*

## What if I am the target of gossip?

***Ask the gossips to stop.***

Don't accuse. Don't try to get even. That only drags you down to their level. If you know that someone is talking about you behind your back, go directly to that person and say something like, *"I hope you know that I would never talk about you to other people, and I hope I can expect the same in return. Can I?"* If it doesn't stop and it's affecting your work or the way others work with you, go to a supervisor and let him or her know what's going on. At that point it's not about you, it's about work.

## What if my boss is a gossip?

***Good luck.***

You might want to take this one in steps. The first step is to send a silent signal. The next time your boss gossips to you, don't join in. That takes all the fun out of gossiping. If that doesn't work, you might need to say something like, *"You know what? I need to work with Dave, and, true or not, that doesn't help me respect him."* Yeah, right, you're thinking. Have any good job leads? Seriously—it doesn't have to be that big a deal. Your boss knows he or she shouldn't be gossiping, so just smile, make sure you don't lecture, and let them save face.

## What if it's not gossip, it's a fact?

***If the fact is about someone else, it's still not yours to tell.***

Whether it's true or false, negative information of any kind about another person is not your business. Everyone should be entitled to share information about themselves when they want and to whom they want.

## Should I tell a co-worker if they are the target of gossip?

***No. But in some cases you may want to tell your supervisor.***

Putting yourself into the middle of this could get really messy—and you probably have enough going on at work without stepping into that one. You could certainly do your part to stop the gossip by telling the gossips to lay off and that you don't want to hear it. But, if it continues and is undermining your co-worker's ability to do his or her job or it is affecting the way other team members are treating him or her, tell a supervisor what's going on.

## What if I find out that a co-worker is doing something unsafe or illegal at work?

***That's not gossip. Let a supervisor know.***

Don't put yourself into the position of confronting a co-worker yourself when you see something like this going on. That's your supervisor's job. (And aren't you glad?) If someone's actions are unsafe or illegal, and you know about it, you could be considered an accessory. That person is putting everyone in the workplace at risk. By letting someone in leadership know, you're just doing your part to protect everyone's right to work safely.

## How do I get someone to stop asking me about something that I regret I ever shared?

*Just let the person know in a nice way that you don't want to discuss it anymore.*

*"I'm sorry if I put you in an awkward position by telling you that. Thanks for being so concerned, but at this point I'd rather just move on and not talk about it anymore."*

## What if a co-worker insists on telling me all of their troubles?

*Kindly tell them that you don't want to be their counselor.*

If the troubles are about work, you can say something like, *"I'm sorry, it sounds like you're really frustrated. I don't want to be insensitive, but I need to concentrate on my work right now. Maybe it would help to talk to (manager's name) about it."*

If your co-worker's stories are about his or her personal life, you can say something like, *"I know you're not looking for answers from me, but I'm feeling uncomfortable talking so much about your personal life."*

## What if a co-worker asks me what I get paid?

*Ask them if they want to know about your love life too.*

Not really. Just smile and say something like, *"I consider that private information."*

# promises & broken promises

## How do I say "no" to a request without making someone mad?

### To a co-worker, carefully.

If you are going to say "no" to a request, you need to make sure that the request is for something that is clearly not your responsibility. Even then, you need to say it carefully. Here are a couple of ideas:

### To a co-worker, when the answer is just "no":

*"Sorry, but as far as I know, that's not my responsibility and I need to concentrate on my own work right now."*

### To a co-worker, when the answer is "not right now":

*"I'm sorry, but I really don't have the time to do that for you right now. Can I get it to you by _____?"*

### To a boss, very carefully.

Obviously, it makes a difference who's doing the requesting. Your manager is not going to look too kindly on a friendly, *"no thanks, I'd rather not,"* response when he or she is asking for something. But you do need to take the lead in keeping requests realistic, so you can deliver what you say you will.

Discuss the request before you agree to it.

IN THIS toget*

this together

ALBANY/DAVIS
D 0114

You need to find out *EXACTLY WHAT* and *EXACTLY WHEN* the requested action or item is needed. If someone, even your boss, is asking for some-thing that is unrealistic in the given amount of time, say something like, *"Can we talk about the time frame for this? I don't want to promise some-thing that I can't deliver."*

## What if I can't get something that I promised, done on time?

*Let people know, now.*

It happens sometimes. Time slips away, projects grow, we procrastinate ... whatever. The most important thing now is to take responsibility for it, let people know that it's not going to be on time. That may not be pleas-ant, but the bad news will go down more easily if you can tell them when they can expect it. And here's another tip: You'll come off looking a lot bet-ter if you don't blame, whine or make excuses—just get it done.

## What if my boss doesn't do what they say they will?

*If it affects you negatively, talk to your boss.*

OK, this is tricky. After all, your boss is the boss and you don't want to be disrespectful. But if your work is suffering because he or she is dropping the ball, you could say something like, *"Can I talk to you about some-thing? Did I understand correctly when you promised to _____ by this Friday?"*

Having said that, say no more. Don't push it. Your boss will get the mes-sage.

## Should I cover for a co-worker who makes me look bad?

*No. But talk to your co-worker about it first before you talk to anyone else.*

If someone else's poor work is making you look bad, you need to be hon-est with that person and let him or her know that they need to do their

part. You should also let them know in advance if you're forced to take the problem to your boss.

## What do I say to a co-worker who always asks me for help on things that should be their responsibility?

*"I'm sorry—I can't."*

*"I'm sorry—I can't. I understand that you need help with this, but I'm hav-ing trouble getting my own work done. Maybe you should talk to (manag-er's name) about getting some help."*

ALBANY/DAVIS
D 0115



# pictures, jokes & language

## What if someone complains about the language I use, and no one else cares?

### Change the language you use.

Not many of us like confrontation. So you can probably assume that this person is not complaining because they want to. Your language really offends them. And maybe it does bother other people but they just haven't said anything to you. Regardless, it's much easier to stop using a few words than to explain it all to your boss, which is probably the next step they'll take if you don't stop. So just make sure that the words you use at <u>work</u> are appropriate for work.

## What if a co-worker makes a racial slur or joke?

### Ask him or her to stop.

Racist stories or comments are not only rude, but can bring serious legal consequences in the workplace. They should never be tolerated. So don't feel like you're being rude when you interrupt the storyteller to say, "*I don't want to hear that.*" Demeaning people because of their race is out of line and could get them fired. If they don't stop, make sure your supervisor knows.

## What if a co-worker makes a sexual slur or joke?

### Ask him or her to stop.

It can also be illegal and is certainly disrespectful to make negative comments in the workplace about people based upon their gender—or, for that matter, their religion, their age, their physical disabilities or any other legally protected status. (See your company's Anti-Harassment Policy.) Putting those comments in the form of a joke doesn't make them any less illegal ... or rude for that matter. You have every right to say something like, "*That's not funny. It's rude. And it could even be illegal.*" If they don't stop, let a supervisor know.

## What if a co-worker calls me an offensive name?

### Don't let it go. Tell him or her to stop.

The old "sticks and stones" rhyme does not apply in the workplace. Words do harm people. Slurs, name-calling and bullying can be considered illegal. They should not be happening at work. Don't tolerate it. If it happens, say something like, "*Please don't call me that again. That's totally out of line and personally offensive.*"

If it continues, tell a supervisor.

## What if someone gives me a nickname I hate?

### Don't let it slide.

Your silence can be taken as permission, so say something to them the first time it happens. "*Please don't call me by that name. I really don't like it. OK?*"

It's just that simple. It's your name. You don't have to put up with people calling you anything other than what you want to be called.

## How do I tell someone to stop swearing?

*You don't—you ask them.*

This can be a tricky subject. Words that are very offensive to one person may just be words of emphasis to someone else. But if someone else's swearing is bothering you, respectfully ask him or her to stop. You might say something like, "I hope you don't mean it, but there are times when your language offends me." If the person doesn't get the message say, "Please don't swear when we're working together. It really bothers me."

## What if someone sends me an offensive or suggestive e-mail?

*Tell him or her immediately to stop.*

Suggestive materials in any form can be considered illegal at work. Even if you're not the sender of the e-mail, you could be implicated in an investigation. So don't let it happen to you. Deal with it right away by replying with something like, "Hey, I didn't appreciate that e-mail you sent me. Please don't send me anything like that again."

## What if my boss says demeaning things about people?

*If it bothers you, ask him or her to stop.*

Whether your boss is trying to be funny or doesn't even realize how rude he or she is, demeaning other people is inappropriate in the workplace. So even though what you really want to say is, "What's wrong with you? Didn't your mother teach you any manners?" it would probably be better to try something like, "Even if you're only kidding, it makes me very uncomfortable to hear you make fun of other people."

If it doesn't stop, talk to another supervisor or someone in your human resources department about it.

## What if someone displays an offensive or suggestive picture?

*Ask them to take it down.*

Similar to the old saying "beauty is in the eye of the beholder," the law says that "offensiveness is in the eye of the beholder." The legal standard that a judge will uphold is, "What would a reasonable person (or, specifically, a reasonable man or woman) find offensive?"

So if you consider a picture or cartoon more than just stupid or juvenile, if you really find it offensive, say something. Ask the owner to take it down. If it's anonymous, take it down yourself. If it persists, let your supervisor know.

IN THIS toge

" THIS together

# sexual attraction and sexual harassment

## What if I want to ask a co-worker out?

### Think about it. Then think about it some more.

Some companies have very specific rules against co-workers dating, and for good reason. They don't want to lose either of you, if love fades. Check out your company's specifics before you pop the question. There is no law that says you can't date co-workers (although some folks who have been through) a work-turned-personal, turned-rotten relationship would tell you that there should be). Think about it. How would you feel if you had to go to work tomorrow with all your ex-girlfriends or ex-boyfriends? Doesn't it sound fun? So weigh the pros and cons carefully before you act.

The only idea that is worse is an employee/boss relationship. Now there's a disaster waiting to happen.

## What if a co-worker I'm no longer dating starts spreading rumors?

### Ask him or her to stop.

Ain't love grand? This is what we meant in the last question about the potential for things getting messy when co-workers date. OK—no more lecturing. This situation is more sensitive, because you've had a relationship with this person, but the solution is the same as the one we discussed earlier about handling gossip. Ask the person to stop by saying something like, "Can we agree to treat each other with respect at work? Please don't

talk about me to other people and I'll make sure not to talk about you." Or "I know you might be really angry right now, but can we work this out on our own time? Please don't talk about me to people at work." Hopefully the other person will agree to this level of respect, but if the rumors continue and are affecting your work, you need to let a manager help you deal with it.

## What if a co-worker uses sexual innuendoes as a joke?

### Tell him or her to stop.

The dictionary defines an innuendo as "a hint." This technique is safer than overt harassment because the harasser can claim they never said anything about sex or they were only joking. But in a court of law, "intent" doesn't matter and "funny" doesn't matter. So don't feel like you have to laugh or ignore it when someone tries to make sexual comments cute. Just say something like, "I don't think that's funny and it isn't appropriate at work. Please don't talk like that around me."

## What if a co-worker always gets too close or touches me?

### Let them know you don't like it.

People differ on the amount of personal space they need to feel comfortable when they are talking or working with others. Some people are perfectly fine with less space and might not realize that they are making you feel uncomfortable by standing so close. So if you like a little more space around you, just let people know. "Can you back up a couple of steps? I feel uncomfortable when you stand so close to me."

When it comes to others touching you, it's your call. But be clear with others as to what you like or don't like. Remember, your silence can be confused with permission. If you feel a person is touching you in a harassing way, say, "I don't like it when you touch me, so please don't." If you feel the person is touching you in a friendly way, but it still makes you uncomfortable, just smile and say, "I'd rather you didn't touch me. Thanks."

If for any reason the person doesn't stop, talk to your supervisor immediately. If your supervisor is doing the touching, talk to his or her supervisor or call the human resources department.

## What if a co-worker is always looking at my body?

### Tell him or her to stop, or talk to a supervisor if you feel too intimidated.

OK. How awkward is this? What do you say? "Hey, get your eyes off my body." Maybe some of us could say that, but most of us couldn't. However, you can say it in a different way—and, yes, you have every right to say it. In fact, you need to say it. No matter what words you choose, it's going to be uncomfortable, but, then, not as uncomfortable as their unwelcome gawking at you, right? So try saying something like, "I'm really uncomfortable with the way that you seem to be looking at my body when we're talking." If the offending co-worker plays innocent, you could follow up with, "Well, you might not be aware of it, but it really bothers me, so could you keep your eyes on my eyes when we talk?"

Some of you might be thinking, "Right. I would never be able to say that to one of my co-workers." That's OK. If you feel intimidated by your co-worker or just don't have the courage to talk face to face with her or him, tell a manager what's going on. But do something about it. It's not going to go away on its own.

## What if my boss is always looking at my body?

### Tell someone else in management about it.

We've all heard people say, "What can I do? He's my boss." Or "She's my boss." But this isn't just something you put up with. If your boss is looking at you in a way that makes you feel uncomfortable or unsafe, it's wrong and it needs to stop. It's understandable that you may not want to confront your boss yourself, but you need to tell somebody. So go to another manager or to someone in human resources in your company and let that person help you deal with the problem.

## What if a co-worker comes on to me outside of work?

### It's up to you.

The answer here all depends upon the type of come-on, and how you feel toward the co-worker. If it happens outside of work and it's not at a work-related function, then a come-on isn't automatically harassment (even

though it might be unwelcome). So if you are not interested in seeing this co-worker socially, you need to tell him or her straight-out, "I'm sorry, but we work together and I'm not interested in seeing you personally." If the come-on is offensive to you, let the other person know that too. "Please don't talk to me like that. I don't appreciate it. And I'm not interested in seeing you socially." If the co-worker continues to pursue you in any way (whether at work or outside of work), let a manager know what's going on.

## What if a customer comes on to me?

### Tell him or her to stop and then tell your manager.

Customers should give you the same amount of respect that your company expects you to give them. So if any of your customers step over the line, you have every right to say something like, "I don't appreciate you talking to me like that. It isn't OK and I need to ask you to stop." Then let your manager know what happened, for two reasons. One, your manager is responsible for helping make sure that it doesn't happen to you again. And Two, none of your co-workers should have to put up with what you just experienced.

ALBANY/DAVIS
D 0119

THIS together

# tolerances & differences

## What if someone asks me if I'm gay?

### Don't even address the question.

This question or any question about your sex life, personal relationships or private life is out of line. Don't say anything, verbally or by your reaction. The person asking this is either clueless, incredibly rude or possibly prejudiced. The best way to respond is to calmly say something like, *"I'm not going to respond to that or any other question about my private life. Please don't ask me about my personal life again."* If the person continues, walk away and let your manager know.

## What if someone makes fun of my English or my accent?

### Ask him or her to stop.

Ridiculing anyone for the way he or she speaks is unacceptable in the workplace. If it's directed at your ethnic origin it could be legally considered harassment. Go directly to the person and ask him or her to stop by saying something like, *"Please don't make fun of the way I speak. I'm trying my best, so please stop."* If the person continues, let your manger know it's happening.

ALBANY/DAVIS
D 0120

## What if I can't understand a co-worker's English?

### Ask him or her to repeat what they said—more slowly.

If you have a hard time understanding one of your co-workers, don't just walk away without a clue as to what that person was saying because you felt too awkward to ask them to repeat themselves. The person wants to be understood, you want to understand, so smile and politely ask, *"I'm sorry, I didn't understand. Could you please repeat that more slowly?"* And one more hint: Just because you have trouble understanding someone doesn't mean that they have trouble understanding you. So unless someone asks you to, don't assume that you should speak more slowly and certainly not more loudly.

## What if someone is always mean to me?

### Bullies don't stop until they're confronted.

If someone is always mean to you and you have absolutely no idea why, they may just be a mean person. It's a sad fact of life, but no matter where you go, you're going to find bullies. Bullies are basically cowards, so the nicer you are, the meaner they get, and the meaner you are, the nicer they get. If you can deal with it, ignore them, but if it's affecting your work, you may want to say something like, *"I can't think of why you should be so rude to me, can you? If we have something to fix, let's fix it. Otherwise, why don't you pretend I don't exist, and I'll do the same for you?"* If that statement sounds like a little more than you can pull off, let your manager help you solve the problem.

## What if someone is always trying to get me into a political or religious discussion?

### Tell them you're not interested.

Some people sincerely believe that they have discovered truths that will make your life or the world better. Other people just love a good debate and the sound of their own voice. At times, people will bait you with questions and comments until they can get you into a discussion. It's best just

to say something like, "You're obviously very sincere in your beliefs, but I'm not interested in hearing them right now. If that changes, I'll come and talk to you. Alright?"

## What if someone makes fun of my personal style?

### Ask him or her to stop.

Your personal style is just that—personal. With the exception of your supervisor mentioning that some element of your style is particularly inappropriate for work, no one else has any right to make jokes or negative comments about it. So regardless of whether it's a comment about your hair, your clothes, your jewelry or anything else, just tell the person (whose own personal style of communication could be classified as rude) to stop. "My personal style is my own business. I find your comments offensive, so please stop."



# courtesy & small kindnesses

## What if someone never says "good morning"?

### Don't take it personally and don't let it stop you from being courteous.

There could be a lot of reasons. Maybe they're shy. Maybe their mind is elsewhere. Maybe this person is so grumpy in the morning that you don't want them near you, anyway. There's really no excuse for not being able to muster up enough courtesy to say "good morning." But if someone you work with can't manage it, just let it go. Don't assume that it has anything to do with you.

But don't stop saying "good morning" to them every day. Who knows, maybe it will rub off?

## What if someone never says "thank you"?

### Don't take it personally and don't let it stop you from being courteous.

It is irritating when someone you work with doesn't acknowledge something you've done for them by saying "thank you." In fact, it's just plain bad manners. So if you work with this person a lot and it really bothers you, you could talk with him or her about it: "You rarely say thank you. Is that intentional?" Otherwise, just let it go, but make sure that you continue treating him or her with the same respect you would like others to show you. Like we said, maybe it will rub off.

## What if there's no time to say "please" and "thank you"?

### Come on ...

OK. Here's a test. Keep your eye on your watch and say "thank you." How long did that take? One-fifth of a second? Maybe you can shorten it to "thanks"—now that's even quicker. So unless you're a drag racer or you're a member of a bobsled team, you can probably give up the extra fifth of a second it takes to say "please" or "thank you" to the people you work with. Now, granted, maybe there are instances in which time is critical; let's say you're involved in a shootout with bank robbers; in that case, you can always go back when the dust settles and hand out the thank-yous.

## What if my boss is abrupt and rude?

### This one is tricky.

First of all, you need to ask yourself a couple of questions. Does your boss treat all of your co-workers the same, or do you feel singled out in receiving this negative treatment? If he or she treats everyone poorly and it really bothers you, you could talk to your boss about it. But only talk about how it affects you personally. Don't go in as an advocate for the whole group. Not only is that not your job, but it is pretty certain to backfire on you.

And here's another hint: Don't start out your conversation with "you" statements like, **"You have no right ..."** or **"You never treat us with any respect!"** Depending on your tone, those can be fighting words. It's always better to use **"I feel"** statements; for example, **I feel unappreciated."** Or "... when I hear that, I feel very disrespected."

If you feel that you are being singled out and the rude behavior is directed toward you personally, if it's abusive, and if it's affecting your work, you need to talk to someone else in management or your human resources department about it. It may be closer to harassment than just a grouchy personality. And if you do speak up about harassment, your company has an obligation to make sure that your boss does not retaliate in any form.

## What if a co-worker acts like they are my boss?

### Bring it up softly.

Maybe this person has worked there longer, maybe they've been asked to train you, or maybe they're just pushy and they wish they were your boss. As insulting as it is to be ordered around by a co-worker, the best way to solve it is with subtlety. The challenge here is to talk to your co-worker without being defensive or making them defensive. You might try saying something like, "I hope you don't mean it, but there are times when some of your requests sound more like demands," or "Sometimes I feel like you're giving me orders when we're equal co-workers, right?" If that doesn't work, check with your supervisor about it.

## How do I stop a feud?

### Stop being part of it.

It's about that straightforward. If there's an ongoing problem between you and a co-worker, do your part to end it. Maybe you need to apologize: "Look, I acted like a jerk earlier, I'm sorry." If you're not ready to do that, maybe you just need to take one small step by saying "goodnight" at the end of the day or "good morning" if you left on bad terms the day before. No matter how rough things get, those are the small kindnesses that can build bridges between people again. And what if the other person doesn't respond right away? Just keep doing the right thing. Keep showing him or her respect and know that you've done what you can to resolve the problem.

It's a little different if the feud is between two other co-workers. You can't solve other people's problems and it really isn't your job. But you can do something to keep it from getting worse: Refuse to side with either of them. "I won't talk to anyone about you and I need to show them the same respect." Other than that, if it's not affecting your work, just let it go. If it is affecting work, it's a manager's job to end it.

IN THIS tog⌐

ALBANY/DAVIS
D 0122

THIS together

# harassment complaints & policies



## Am I responsible if I just witness harassment, but I'm not part of it?

**Yes.**

As a fellow human being and a respectful co-worker, you are very responsible for trying to stop harassment. Wouldn't you want someone to help you or a member of your family if they were being harassed? And, yes, from a work standpoint, you may very well be held responsible for your knowledge and witnessing of an illegal act. You don't need to step into the middle of it yourself, but you certainly need to tell your supervisor or someone else in authority.

## What if I'm threatened about "squealing?"

**The penalty for threatening can be worse than harassing.**

A harasser risks losing their job if an investigation proves they were guilty, but it rarely becomes a police matter. On the other hand, threatening bodily harm to you or anyone could be a criminal offense as well as grounds for immediate termination. It is illegal to retaliate in any way against someone who reports harassment or who co-operates in a harassment investigation. (See your company's harassment policy).

## Can I remain anonymous if I file a complaint or help with a harassment investigation?

### Maybe, but it all depends.

Each investigation is different. Your company is going to be very sensitive to protect the identity and reputation of everyone involved in a complaint until all the facts are known and proven. But there are no guarantees of anonymity. If you were suddenly charged with harassment, wouldn't you feel you had the right to know who was making the charges? It takes courage to file a complaint and it takes the same courage to stand with someone who's been hurt by harassment.

## What exactly happens when a complaint is filed?

Your company may do things differently but....

... for most companies, the process looks like this:

### Investigation

○ *There will be an immediate investigation including interviews with the person filing the complaint, the alleged harasser and any witnesses.*

○ *Both the complainant and the alleged harasser may be asked to complete a signed, written statement detailing their recollections of the event(s).*

### Evaluation

○ *The investigation team will consider the evidence and come to a timely decision.*

### Action

○ *Both parties will be notified immediately as to the results of the investigation. If there is proof of harassment, discipline will be given to the harasser, and could include a warning, unpaid suspension, or termination.*

ALBANY/DAVIS
D 0123

## What are the basics of harassment?

Harassment is not always intentional and doesn't have to be intentional to be illegal. Men can harass men, women can harass women, women can harass men, and men can harass women. It's the behavior that counts, not the gender of the participants. A person can feel harassed even if he or she is not the intended target of the behavior. While not all harassing behavior meets the standard of illegal conduct, any workplace harassment is inappropriate and should not be tolerated. If you feel harassed at work or you are aware of incidents of workplace harassment, you have a right and responsibility to address the situation. You may confront the harasser if you feel comfortable doing so, or report the harassment to your manager or an appropriate human resources manager. If you report an incident of harassment, the organization will conduct a fair, discreet investigation and appropriate corrective action will be taken. It is illegal to retaliate in any way against an employee for complaining about or reporting workplace harassment.

## What is our company's policy on harassment?

Our company is committed to maintaining a work environment that is free from discrimination. In keeping with this commitment, we will not tolerate harassment of our employees by any supervisor, co-worker, vendor or customer of this company.

Harassment consists of unwelcome conduct, whether verbal, physical or visual, that is based on a person's protected status, such as sex, color, race, religion, national origin, age, physical or mental disability or other protected group status. Our company will not tolerate harassing behavior that affects tangible job benefits, that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile, or offensive working environment. Such harassment may include, for example, jokes about another person's protected status, kidding, teasing or practical jokes directed at a person based upon his or her protected status.

All employees are responsible to help assure that we avoid harassment. If you feel that you have experienced or witnessed workplace harassment, you are to notify the human resources manager, your department head or

your supervisor. Our company forbids retaliation against anyone for reporting harassment, assisting in making a harassment compliant or cooperating in a harassment investigation. If you feel you have been retaliated against, you are to notify the human resources manager, your department head or your supervisor.

It is our company's policy to investigate all such complaints thoroughly and promptly. To the fullest extent practicable, the company will keep complaints and the terms of their resolution confidential. If an investigation confirms that a violation of the policy has occurred, the company will take corrective action, including discipline, up to and including immediate termination of employment.

## What is our company's policy on sexual harassment?

Our company fully supports laws and regulations designed to prevent sexual harassment within the work environment. Sexual harassment consists of unwelcome sexual conduct, sexual advances, requests for sexual favors and other visual, verbal or physical conduct of a sexual nature that is a term or condition of employment. It is sexual harassment when submission to or rejection of such conduct is used as a basis for employment decisions, such as hiring, scheduling or continued employment. It is also sexual harassment when such conduct unreasonably interferes with an individual's job performance or creates an intimidating, hostile or offensive work environment.

Sexual harassment will not be tolerated and will result in disciplinary action, including possible termination. If you feel that you are being subjected to sexual harassment, promptly contact your immediate supervisor, your supervisor's supervisor, the human resources manager or any appropriate corporate officer or company representative.

# IN THIS together™

An Engaging Look at Harassment and Respect

## Opinion Survey

1. If you arrive at work in a bad mo...
   - a. *Try to avoid others*
   - b. *Warn others to stay clea...*
   - c. *Leave it at the door*

2. When offered a juicy bit of...
   - a. *Listen, but keep it to...*
   - b. *Get it all and pass it...*
   - c. *Refuse to hear it*

3. Do you do what you say you w...
   - a. *Eventually*
   - b. *If it matters*
   - c. *Always*

4. If what I say offends you...
   - a. *I'll wait until you're not around*
   - b. *I'm just being real*
   - c. *I'll stop*

5. What is the rule when it comes to sexual attraction at work?
   - a. *Look but don't touch*
   - b. *Look if they want you to*
   - c. *Don't look, don't touch*

6. Who ever said "live and let live"...
   - a. *Was sincere but naive*
   - b. *Had no strong beliefs*
   - c. *Got it right*

7. Always using "please and thank you" at work is...?
   - a. *Nice, but impractical*
   - b. *Annoying and fake*
   - c. *Common courtesy*

ALBANY/DAVIS
D 0125



**IN THIS**

# together™

### An Engaging Look at
### Harassment and Respect

**About This Book**

Disrespect is at the root of all harassment. This book is a simple and very basic handbook about the ways in which we can show respect toward the people we work with.

From common courtesy and greetings to refraining from gossip and rude remarks, this handbook is designed to provide employees with quick and practical advice on showing and getting respect at work. Topics include:

**Moods, Personal Issues & Attitudes**

**Gossip, Privacy & Nosy Co-workers**

**Promises & Broken Promises**

**Pictures, Jokes & Language**

**Sexual Attraction & Sexual Harassment**

**Tolerance & Differences**

**Courtesy & Small Kindnesses**

**Harassment Complaints & Policies**

We're proud of this handbook. We hope that every employee in your organization can have one. Please call your distributor about quantity discounts.

**About The Publisher**

Media Partners publishes performance improvement materials and media based training for organizations around the world. Our company was founded in 1993 in Seattle, Washington.

We've collected a very select library of training tools from the industry's best training producers. We strive to represent only those products which we believe have the highest production values, are based on human truth, are decidedly positive and truly inspirational. You can view our entire library on-line at

**www.mpcfilms.com**

All of us at Media Partners sincerely hope that you find our materials enjoyable to use, and that our books and programs help you make a positive difference in your world.

This handbook is designed to be used with an accompanying video program of the same name, **IN THIS together**.

*To order that program, more handbooks or for any other information, please call your distributor or contact us at:*

**1-800-408-5657**

*You'll find us on-line at: mpcfilms.com*

$14.95
$9.95 with video

© 2000 MPC

**Enterprise Media**
91 Harvey St.
Cambridge, MA 02140
1-800-423-6021
http://www.enterprisemedia.com

| HR004 | 8/4/94 | TTB |
|-------|--------|-----|

# Training Record / Procedure Review

Date: _1-9-01   11:00 a.m._

Department: _Plant Leadership Team_

Procedure: • _Diversity Training (Harassment, Discrimination, etc.)_    • _Workplace Violence Training_

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

1  _Ted Bryant_                16  _____
2  _Bob Hammy_                 17  _____
3  _Michael Barnitte_          18  _____
4  _George Gales_              19  _____
5  _Ken Funderburk_            20  _____
6  _Richard Ferguson_          21  _____
7  _____               22  _____
8  _Bill Taylor_               23  _____
9  _____             24  _____
10 _____             25  _____
11 _____             26  _____
12 _____             27  _____
13 _____             28  _____
14 _____             29  _____
15 _____             30  _____


DEFENDANT'S EXHIBIT
Davis

ALBANY/DAVIS
D 0135

| HR004 | 8/4/94 | TTB |

# Training Record / Procedure Review

Date: _1 - 9 - 01   3:00 p.m._

Department: _Office, Finishing, Weaving, Seaming_

Procedure: • _Diversity Training (Harassment, Discrimination, etc.)_   • _Workplace Violence Training_

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

| | | | |
|---|---|---|---|
| 1 | _[signature]_ | 16 | _Lynda M Jones_ |
| 2 | _[signature]_ | 17 | _[signature]_ |
| 3 | _[signature]_ | 18 | _[signature]_ |
| 4 | _[signature]_ | 19 | _[signature]_ |
| 5 | _Doug Ray_ | 20 | _D. Cooley_ |
| 6 | _[signature]_ | 21 | _Rodney Donahey_ |
| 7 | _Robert Kelley_ | 22 | _[signature]_ |
| 8 | _Shelley Brooks_ | 23 | _[signature]_ |
| 9 | _Todd Morgan_ | 24 | _Harold L. Stone_ |
| 10 | _[signature]_ | 25 | _Jesse L. [illegible]_ |
| 11 | _Todd Tidwell_ | 26 | _Barbara Smith_ |
| 12 | _Willie L. [illegible]_ | 27 | _Doris Carter_ |
| 13 | _[signature]_ | 28 | _Velma Sutton_ |
| 14 | _Melvin Bean_ | 29 | _Douglas M. Comer, J._ |
| 15 | SUSAN SNEED | 30 | _Maurice Rollin III_ |

ALBANY/DAVIS
D 0136

| HR004 | 8/4/94 | TTB |
|---|---|---|

# Training Record / Procedure Review

Date: _1-10-01  5:00 a.m._

Department: _Finishing, Seaming_

Procedure: • Diversity Training (Harassment, Discrimination, etc.)    • Workplace Violence Training

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

| # | Signature | # | Signature |
|---|---|---|---|
| 1 ✓ | _Ernst Bass_ | 16 | |
| 2 ✓ | _Ann Kapp_ | 17 | |
| 3 ✓ | _Sub Cheng_ | 18 | |
| 4 ✓ | _Todd Klein_ | 19 | |
| 5 ✓ | _Joyl I Duks_ | 20 | |
| 6 ✓ | _Tony Ruf_ | 21 | |
| 7 ✓ | _Ronald Drag Sr._ | 22 | |
| 8 ✓ | _Bill Smith_ | 23 | |
| 9 ✓ | _Troy Arnold_ | 24 | |
| 10 ✓ | _Navally W. Collins_ | 25 | |
| 11 ✓ | _Ida B. Suls_ | 26 | |
| 12 ✓ | _Bessie Jones_ | 27 | |
| 13 ✓ | _Bradford Roberts_ | 28 | |
| 14 ✓ | _Clement Johnson_ | 29 | |
| 15 | | 30 | |

ALBANY/DAVIS
D 0137

| HR004 | 8/4/94 | TTB |

# <u>Training Record / Procedure Review</u>

Date: _1 – 10 – 01    7:00 a.m._

Department: _Weaving, Finishing, Weaving Services, Seaming_

Procedure: • _Diversity Training (Harassment, Discrimination, etc.)_    • _Workplace Violence Training_

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

1  ✓ _Ed Kelley_
2  ✓ _Don Davis_
3  ✓ _Don R. Platt_
4  ✓ _Scott Cripple_
5  ✓ _Ronnie Lindsey_
6  ✓ _Ernest P. Woodward_
7  ✓ _[signature]_
8  ✓ _Tony White_
9  ✓ _David Brown_
10 ✓ _Marty Farmer_
11 ✓ _James Puckett_
12 ✓ _Ronnie Davis_
13 ✓ _Elmer Clickley_
14 ✓ _[signature]_
15 ✓ _[signature]_

16 ✓ _Jeff Maddox_
17 ✓ _Tony Harris_
18 ✓ _Merle Baker_
19 ✓ _Ronald Rhodes_
20 ✓ _Douglas [signature]_
21 ✓ _[signature] Ferguson_
22 ✓ _Gwendolyn D. Wingard_
23 ✓ _Catherine Davis_
24 ✓ _Mamie [signature]_
25 ✓ _[signature] Reynolds_
26 ✓ _Nigel R. Johnson_
27 ✓ _Edward C. Hyde_
28 ✓ _Joy Littleton_
29 ✓ _Terry Henderson_
30 ✓ _Dean King_
31 ✓ _Wilbert Scott_

ALBANY/DAVIS
D 0138

| HR004 | 8/4/94 | TTB |
|-------|--------|-----|

# Training Record / Procedure Review

Date: _1-10-01   7:00 a.m._

Department: _Weaving, Finishing, Weaving Services, Seaming_

Procedure: • _Diversity Training (Harassment, Discrimination, etc.)_   • _Workplace Violence Training_

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

1 ✓ _Alan W. Pufent_    16 _____
2 ✓ _Smack Bean_    17 _____
3 ✓ _Moren Floyd_    18 _____
4 ✓ _Sam Butler_    19 _____
5 ✓ _Stephen D McLean_    20 _____
6 ✓ _James H. Doe_    21 _____
7 ✓ _Carlis Miles_    22 _____
8 _____    23 _____
9 _____    24 _____
10 _____    25 _____
11 _____    26 _____
12 _____    27 _____
13 _____    28 _____
14 _____    29 _____
15 _____    30 _____

ALBANY/DAVIS
D 0139

| HR004 | 8/4/94 | TTB |
|-------|--------|-----|

# Training Record / Procedure Review

Date: _1-11-01_     _5:00 a.m._

Department: _Finishing, Weaving_

Procedure: • Diversity Training (Harassment, Discrimination, etc.)     • Workplace Violence Training

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

1 ✓ Pete Baldwin
2 ✓ Nathaniel Jones
3 ✓ Adell Peterson Jr.
4 ✓ William Shepherd
5 ✓ William Carpenter
6 ✓
7 ✓ Kenneth Bell
8 ✓ Jack Hyde
9 ✓ Travis Edwards
10 ✓ Kenny Strength
11 ✓ Jason Franklin
12 ✓ Chuck Randell
13 ✓ Chad Beardshear
14 ✓
15 ✓ Paul Powell
16 ✓ George McMillan
17 ✓ Joey Henley
18 ✓ Eddie Jones
19 ✓ Bobby Fant
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 _____

ALBANY/DAVIS
D 0140

| HR004 | 8/4/94 | TTB |
|-------|--------|-----|

# Training Record / Procedure Review

Date: _1 - 11 - 01     7:00 a.m._

Department: _Weaving, Fabric Inspection, Shipping, Weaving Services, Main_

Procedure: • _Diversity Training (Harassment, Discrimination, etc.)_     • _Workplace Violence Training_

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

| | | | |
|---|---|---|---|
| 1 ✓ Billy Coleman | 16 ✓ _(signature)_ |
| 2 ✓ T. _(signature)_ | 17 ✓ Danny Ricks |
| 3 ✓ Tom Turner | 18 Edward A. _(signature)_ |
| 4 ✓ R. _(signature)_ | 19 ✓ Richard Wade Hill |
| 5 ✓ _(signature)_ | 20 ✓ _(signature)_ |
| 6 ✓ _(signature)_ | 21 ✓ Scott Wilson |
| 7 ✓ _(signature)_ | 22 ✓ Michael Norman |
| 8 ✓ _(signature)_ | 23 ✓ _(signature)_ |
| 9 ✓ _(signature)_ | 24 ✓ _(signature)_ |
| 10 ✓ _Null Bass_ | 25 ✓ Bill Penn |
| 11 ✓ Chet _(signature)_ | 26 ✓ _(signature)_ |
| 12 ✓ Edward _(signature)_ | 27 ✓ _(signature)_ |
| 13 ✓ Darryl Harper | 28 ✓ Beth _(signature)_ |
| 14 ✓ Wayne _(signature)_ | 29 ✓ Billy _(signature)_ |
| 15 ✓ Frank _(signature)_ | 30 ✓ Johnny Butler |

ALBANY/DAVIS
D 0141

| HR004 | 8/4/94 | TTB |
|-------|--------|-----|

# Training Record / Procedure Review

Date: _1-11-01    7:00 a.m._

Department: _Weaving, Fabric Inspection, Shipping, Weaving Servic Main_

Procedure: • Diversity Training (Harassment, Discrimination, etc.)  • Workplace Violence Training

Trainer: _Dana Champagne (AI Corporate)_

All attendees at session listed below:

1 ✓ _Jackie Butler_                16 _____
2 ✓ _Michael H. Johnston J_        17 _____
3 ✓ _Steve Kelley_                 18 _____
4 ✓ _Danny Rollin_                 19 _____
5 _____                       20 _____
6 _____                       21 _____
7 _____                       22 _____
8 _____                       23 _____
9 _____                       24 _____
10 _____                      25 _____
11 _____                      26 _____
12 _____                      27 _____
13 _____                      28 _____
14 _____                      29 _____
15 _____                      30 _____

ALBANY/DAVIS
D 0142

# Prudential Financial

**Group Disability Insurance**
**Employer Statement**

## Employer Information

**Employer Name:** ALBANY International

**Control Number:** 23367

**Branch Number:**

**Address:** P.O. Box 11065

**City:** Montgomery **State:** AL **Zip Code:** 36111 - 9065

**Employer Phone Number:** 334-285-0040

**Email Address:**

## Employee Information

**First Name:** Dora **MI:** D

**Social Security Number:** 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

**Last Name:** Davis **Suffix:**

**Coverage in force when absence began (check all that apply):** ☑ STD ☑ LTD

**Employee Phone Number:** 334-407-9268

**Gender:** ☐ Male ☑ Female

**STD Coverage Selected:** ☑ Core ☐ Optional _____

**LTD Coverage Selected:** ☑ Core ☐ Optional _____

**Date employee became a covered individual for the applicable Coverages:**
STD: 12/28/2001
LTD: 11/15/1996

**Date Hired (MM/DD/Year):** 3/12/1979

**Coverage Termination Date:** / /

**Date Last Worked:** 11/11/2002

**Date First Absent:** 11/12/2002

**Date Work Was Resumed:** 11/18/2002

**Normal Earnings Prior To This Absence (exclude bonus, overtime, etc.):** $ ___,__18.78

**Frequency of Normal Earnings:**
☑ Hourly ☐ Monthly
☐ Weekly ☐ Annually
☐ Bi-Weekly ☐ Other _____

**Last Date Employer Paid Any Compensation:** / /

**Work Hours**

Is the employee's work week Monday thru Friday? ☑ Yes ☐ No

Number of hours worked per normal work week: 40

**If not Mon thru Fri, Check Days Worked**
☐ Varies ☐ Wednesday ☐ Saturday
☐ Monday ☐ Thursday ☐ Sunday
☐ Tuesday ☐ Friday

**Employment Status**
☐ Salary
☑ Hourly
☐ Other _____

Does employee contribute toward the STD Premium? ☑ Yes ☐ No
If Yes: ☐ Pre Tax ☐ Post Tax
If Post Tax:
_____ % paid by employer
_____ % paid by employee

Does employee contribute toward the LTD Premium? ☑ Yes ☐ No
If Yes: ☐ Pre Tax ☐ Post Tax
If Post Tax:
_____ % paid by employer
_____ % paid by employee

**DEFENDANT'S EXHIBIT**

Davis 6

**For Internal Use Only**

**Claim Number:**

* 1 0 2 A 0 1 *

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885

ALBANY/DAVIS
D 0202

# Prudential ⚫ Financial

**Group Disability Insurance
Employer Statement**

Employee Last Name: `D a v i s`

Social Security Number: `434 - 66 - 7619`

## Employee Information (Continued)

Is employee covered under a Prudential Group Life Insurance Policy? ☐ Yes ☐ No

If Yes, what is the Face Amount? $ ☐ , ☐☐☐ , ☐☐☐ .00

## Other Income, Deductions & Workers' Comp. Information

Please indicate any applicable deductions, such as Local Tax, State Income Tax, Medical, Dental, Life, 401K, that should be withheld from the employee's benefits, if approved. Please also indicate if the employee is receiving, or is eligible to receive, benefits from any other sources because of this absence, such as Salary Continuance, Workers' Compensation, Social Security Disability or Retirement Benefits, Statutory Benefits, No Fault Auto Insurance, Retirement or Pension Plan. Please send copies of any letters or notices approving or denying benefits.

| Source | Applied For Yes | Applied For No | Amount | Frequency | Date Benefit Begins | Date Benefit Ends |
|---|---|---|---|---|---|---|
| Salary Continuance | | | | | | |
| State Disability Benefits | ☐ | ☑ | | | | |
| Workers' Compensation | ☐ | ☑ | | | | |
| Other: _____ | ☐ | ☑ | | | | |
| Other: _____ | ☐ | ☑ | | | | |

Has the employee indicated that the absence is work related? ☐ Yes ☑ No

Has a Workers' Compensation claim been filed? ☑ Yes ☐ No

*For Prior Injury*

## Job Information

Occupation: `Mail Scanner`

DOT Job Code: _____

What Job Category best describes the employee's essential job duties? (Please check appropriate box)

☐ **Sedentary** Negligible Weight Mostly Sitting

☐ **Light** Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull

☑ **Medium** 10 to 25 lbs. freq. Up to 50 lbs. occ.

☐ **Heavy** 25 to 50 lbs. freq. 50 to 100 lbs. occ.

☐ **Very Heavy** More than 50 lbs. freq. 100 lbs. occasionally

☐ **Other** (Please describe below)

As the employer, would you be able to accommodate modified duty to facilitate early return to work? ☑ Yes ☐ No

If Yes, please explain (reduced hours, job modification, etc): *Depending on restrictions*

## Fraud Notice

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes the Employee and Attending Physician portions of the claim form.

x *Lynda M. Jones*

Employer Signature

Date Signed: `12 / 11 / 2003`

`* 1 0 2 A 0 2 *`

ALBANY/DAVIS
D 0203

# Prudential Financial

**Group Disability Insurance**
**Employee Statement**

## Employer Information

**Employer Name:** Albany International

**Control Number:** 23365

**Location / Division:** Montgomery

**Branch Number:**

## Employee Information

**First Name:** Dora Davis

**MI:** D

**Social Security Number:** 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

**Last Name:** DAVIS

**Suffix:**

**Mailing Address - Line 1:** 5702 Red Barn Rd

**Mailing Address - Line 2:** Montsgomery

**Birth date (MM/DD/Year):** 8/25/1951

**City:** Montgomery

**State:** AL

**Zip Code:** 36116 -

**Gender:** ☐ Male  ☒ Female

**Marital Status:** ☐ Unmarried  ☒ Married  ☐ Divorced  ☐ Widowed

**Primary Phone Number:** 334-409-9768

**Work Phone Number:** 334-288-0040

**Email Address:**

**Date Last Worked (MM/DD/Year):** 11/11/2002

**Date First Absent:** 11/12/2002

**Date First Treated for this Condition:** 11/12/2002

**Date Expected to Return to Work:** 11/18/2002

**Spouses Date of Birth:** 13/17/1944

**Is Spouse Employed?** ☐ Yes  ☒ No

**EDUCATION:**
**Highest Grade Completed:** 12

**Number of Children Under 18:**

**Age of Youngest Child:** 27

## Job Information

**Occupation:** Mop Seamer

**What Job Category best describes your required job duties? (Please check appropriate box)**

☒ **Sedentary** — Negligible Weight Mostly Sitting

☐ **Light** — Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull

☐ **Medium** — 10 to 25 lbs. freq. Up to 50 lbs. occ.

☐ **Heavy** — 25 to 50 lbs. freq. 50 to 100 lbs. occ.

☐ **Very Heavy** — More than 50 lbs. freq. 100 lbs. occasionally

☐ **Other** — (Please describe below)

## Primary Care Physician

**Physician Name:** Dr Mathis

**Primary Phone Number:** 334-326-9600

**Street Address:** 8190 Seaton

**Fax Number:** 334-326-9610

**City:** Montgomery

**State:** AL

**Zip Code:** 36116 -

**For Internal Use Only**

**Claim Number:**

• 101A01 •

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885

# Prudential Financial

**Group Disability Insurance**
**Employee Statement**

Employee Last Name: D A V I S   D o r a

Social Security Number: 4 2 4 - 6 6 - 7 6 1 4

## Medical Information

All Other Physicians You Have Consulted for this Condition

| Physician Name | Specialty | Phone Number |
|---|---|---|
| Dr. Miller | | |
| Dr Katzs | | |
| Dr Turner | | |

What medical condition is preventing you from working? __Pain__

How does this condition interfere with your ability to perform your job? _____

Have you been hospitalized for this condition? ☐ Yes ☒ No    ☐ In-Patient ☐ Out-Patient

If hospitalized, give dates:
From: __ / __ / __
To: __ / __ / __

If you are pregnant:
Estimated Delivery Date __ / __ / __
Actual Delivery Date __ / __ / __

Name of Your Health Insurance Company _____

Telephone Number ___ - ___ - ___

## Other Income & Workers' Comp. Information

What other income are you entitled to receive as a result of your disability? (Examples: Social Security Disability or Retirement Benefits, Workers' Compensation, State Disability, Pension Disability or Retirement, No-Fault Auto Insurance, Salary Continuance, Group Life or Disability Plan, Health or Welfare Plan, Individual Disability Benefits.) Please send copies of any letters or notices approving or denying benefits.

| Source | Applied For Yes | Applied For No | Amount | Frequency | Date Benefit Begins | Date Benefit Ends |
|---|---|---|---|---|---|---|
| Salary Continuance | | | | | | |
| State Disability Benefits | ☐ | ☐ | | | | |
| Workers' Compensation | ☐ | ☐ | | | | |
| Other: _____ | ☐ | ☐ | | | | |
| Other: _____ | ☐ | ☐ | | | | |

Is this condition work related? ☐ Yes ☐ No    If Yes, do you intend to file a Workers' Compensation claim? ☐ Yes ☐ No

## Fraud Notice

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form. (Please see state specific fraud warnings attached.)

X _____ Employee Signature

Date Signed: 1 1 / 2 2 / 2 0 0 2

* 1 0 1 A 0 2 *

ALBANY/DAVIS
D 0205

# Prudential ⬤ Financial

**Group Disability Insurance
Medical Authorization
and Tax Notice**

| First Name | | MI | Social Security Number |
|---|---|---|---|
| D o r a   D a v i s | | D | 4 2 4 - 6 6 - 7 6 1 4 |

**Last Name**

**Suffix**

---

**1 Authorization To Release Medical Information**

**PERSONS OR INSTITUTIONS:** This authorizes you to give The Prudential Insurance Company of America, its affiliates and representatives, any information, data or records you have regarding my medical history and treatment (including records pertaining to psychiatric, drug or alcohol use, and any medical condition I may now have or have had), and any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, credit, financial, earnings and employment history) needed to evaluate my claim for benefits. I understand that any such information obtained may be provided to a person or agency requested by Prudential to assist with this purpose. This authorization is valid during the dependency of my claim. I understand that I have the right to request and receive a copy of this authorization. A photocopy of this authorization is as valid as the original.

Unless limits* are shown below, this form pertains to all of the records listed above.

This information is for the sole use of Prudential or the group contract holder which will process the claim. Unless the law requires it, information will not be given in an identifiable form to any other persons unless I agree to its release in writing.

I can revoke this authorization by giving notice to Prudential. The notice will not apply to information released before the date Prudential has the notice. If not revoked, this authorization will be valid while the claim is pending, but not more than one year from the date it is signed.

I agree that a photocopy of this form will be valid as the original.

*Limits, if any: _____

_____

X 

**Employee Signature (indicate how related if signed by other than claimant)**

| 1 | / | 2 2 | / | 2 0 0 6 |
|---|---|---|---|---|

**Date Signed**

---

**2 Tax Notice**

Benefits provided under your Group Disability Income Plan may be subject to federal, state and local taxation. Contact your employee benefits representative or disability plan trustee for details on your rights and obligations under the various tax codes. If you wish to have Federal Income Tax (FIT) withheld from any payments you may receive, indicate the amount to be withheld below and sign the authorization. Withholding requests may also be submitted on IRS Form W-4S. Withholding requests must be stated in whole dollar amounts. FIT will not be withheld if the disability benefit is not taxable.

I request voluntary Federal Income Tax withholding from each payment, as authorized under section 3402(c) of the Internal Revenue Code, in the amount(s) of:

For STD [ ][ ][ ] .00 weekly ($20.00 minimum)

For LTD [ ][ ][ ] .00 monthly ($88.00 minimum)

X 

**Employee Signature (indicate how related if signed by other than claimant)**

| 1 | / | 2 2 | / | 2 0 0 6 |
|---|---|---|---|---|

**Date Signed**

---

**For Internal Use Only**

[ ][ ][ ][ ][ ][ ]

**Claim Number**



* 1 0 4 A 0 1 *

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885

ALBANY/DAVIS
D 0206

 **Prudential Financial**

**Group Disability Insurance**
**Attending Physician's Statement**

| To Be Completed By Employee | |
|---|---|
| Employer/Association Name | Albany International |
| Control Number | 23367 |
| Employee First Name | Dora | M | D |
| Social Security Number | 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 |
| Employee Last Name | DAVIS | Suffix | |
| Employee Address - Line 1 | 5704 Red Barn Rd |
| Birth date (MM/DD/Year) | 8/05/1951 |
| Employee Address - Line 2 | Montgomery AL 36116 |
| Gender | ☐ Male  ☑ Female |
| City | | State | AL | Zip Code | 36116 - |
| Occupation | Mac Seamer |

I hereby authorize release of information requested on this form by the below named physician for the purpose of claim processing.

X _Dora Davis_    Date Signed: 6/5/2002
Employee Signature

| To Be Completed By Attending Physician | |
|---|---|
| **Clinical Diagnosis** | **ICD-9 Code** |
| Primary: Neck pain | 723.1 |
| Secondary: Low back pain | 724.2 |
| Secondary: | |
| Pregnancy EDC | / / |

Relevant test procedures performed (Please provide results) _____
N/A

Surgical procedure(s) performed (Please be specific): _____  Date of Procedure: / /
N/A

Current Medications: Valium, resterectic, Act, premarin, analgesics

For Internal Use Only
Claim Number

‖‖‖‖‖‖ 103 A 01

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19101
Tel: 1-800-842-1718   Fax: 1-877-889-4885

ALBANY/DAVIS
D 0207

# Prudential 🌀 Financial

**Group Disability Insurance**
**Attending Physician's Statement**

**Employee Last Name**
D A V I S

**Social Security Number**
☐☐☐ - ☐☐ - ☐☐☐☐

**Attending Physician Information (Cont'd)**

Was Claimant hospital confined?  ☐ Yes  ☒ No

If hospitalized, give dates:
From: ☐☐ / ☐☐ / ☐☐☐☐
To: ☐☐ / ☐☐ / ☐☐☐☐

If Yes, please provide name and address of hospital:

**Other Treating Physicians or Consultants**

| Physician Name | Specialty | Phone Number |
|---|---|---|
| | | |
| | | |
| | | |

Do you feel the claimant is competent to endorse checks and direct the use of proceeds?  ☐ Yes  ☐ No

**Nature of Medical Impairment / Limitation** (Please specify nature of corresponding loss of function)

neck pain
low back pain

Date when significant loss of function occurred: 1 1 / 1 1 / 2 0 0 2

**Are there Corresponding Medical Restrictions** (i.e., What activities should the claimant not perform because of a significant risk to self or others?)

may have neck/back restrictions intermittently

**Prognosis for Return to Function / Return to Work:** has returned effective 11/18/02

**Return to Work Plan** (Please describe):  Target Date: 1 1 / 1 8 / 2 0 0 2



# Prudential 🔶 Financial

**Group Disability Insurance**
**Attending Physician's Statement**

Employee Last Name

Social Security Number

## Attending Physician Information (Cont'd)

Describe Medical Obstacles to Return to Work: *Ms. Davis missed work 11/2 - 11/15 but returned on 11/18*

*- she has had persistent neck & back pain*

Are there any Non-Medical Factors which have a significant impact on Functional Abilities (i.e., interpersonal, financial, family)? *N/A*

Work related illness or injury? [X] Yes [ ] No

Was Condition caused by a MVA? [ ] Yes [X] No

If MVA, in what state did it occur?

First Visit: 0 7 / 0 3 / 2 0 0 1

Last Visit: 1 2 / 0 5 / 2 0 0 2

Frequency of Visits: *Variable*

What Job Category best describes the claimant's functional abilities? (Please check appropriate box)

[ ] Sedentary — Negligible Weight Mostly Sitting

[ ] Light — Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull

[X] Medium — 10 to 25 lbs. freq. Up to 50 lbs. occ.

[ ] Heavy — 25 to 50 lbs. freq. 50 to 100 lbs. occ.

[ ] Very Heavy — More than 50 lbs. freq. 100 lbs. occasionally

[ ] Other (Please describe below)

## Physician Information

Physician Name: J E F F R E Y   M A T H E S

Primary Phone Number: 3 3 4 - 3 9 6 - 9 1 0 0

Office Address: 8 1 7 0   S E A T O N   P L A C E

Fax Number: 3 3 4 - 3 9 6 - 9 1 1 0

City: M O N T G O M E R Y

State: A L

Zip Code: 3 6 1 1 6 -

Specialty: F A M I L Y   M E D I C I N E

## Fraud Notice

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

X *Jm Mathes MD*
Physician Signature

1 2 / 0 5 / 2 0 0 2
Date Completed

* 1 0 3 A 0 3 *

ALBANY/DAVIS
D 0209

# Albany International Corp /

## *Hourly Montgomery Employees - Branch 208*

**Short Term Disability Coverage**

**Long Term Disability Coverage**



Davis 7



ALBANY/DAVIS
D 0001

*PROVISION IS SUBJECT TO STATE FILING APPROVAL*

# Benefit Highlights

## SHORT TERM DISABILITY PLAN

This short term disability plan provides financial protection by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | October 1, 2001 |
| **Contract Holder:** | ALBANY INTERNATIONAL CORP |
| **Group Contract Number:** | GW-23369 |
| **Covered Classes:** | All hourly Employees of Montgomery. |
| **Minimum Hours Requirement:** | Employees must be working at least 30 hours per week. |
| **Employment Waiting Period:** | None. |
| **Elimination Period:** | 3 days for disability due to accident;<br>3 days for disability due to sickness.<br><br>**\*Benefits begin the day after the Elimination Period is completed. If you are disabled more than 3 weeks, benefits will be paid retroactively to the first day of disability.**<br><br>GRP 112731 |
| **Weekly Benefit:** | $285.00*<br><br>*Effective November 15, 2001 - $300.00<br><br>Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered under this plan. |
| **Maximum Period of Benefits:** | 26 weeks of benefits. |
| **Cost of Coverage:** | The short term disability plan is provided to you on a non-contributory basis. The entire cost of your coverage under the plan is being paid by your Employer. |

**The above items are only highlights of your coverage. For a full description please read this entire Group Insurance Certificate.**

ALBANY/DAVIS
D 0002

# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability.  The amount you receive is based on the amount you earned before your disability began.  In some cases, you can receive disability payments even if you work while you are disabled.  Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | October 1, 2001 |
| **Contract Holder:** | ALBANY INTERNATIONAL CORP |
| **Group Contract Number:** | GW-23369 |
| **Covered Classes:** | All hourly Employees of Montgomery. |
| **Minimum Hours Requirement:** | Employees must be working at least 30 hours per week. |
| **Employment Waiting Period:** | The following period of continuous full-time service with the Employer: |
| | For Employees who are full-time with five years of service and in the Covered Classes on August 1, 1999 - None. |
| | For all other Employees - Five years. |
| **Elimination Period:** | 26 weeks. |
| | **Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | 65% of your monthly earnings, but not more than $3,500.00. |
| | Your benefit may be reduced by deductible sources of income and disability earnings.  Some disabilities may not be covered or may be limited  under this coverage. |

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

83500
CBH-LTD-1001

2

(23369-7)

ALBANY/DAVIS
D 0003

**Cost of Coverage:**    The long term disability plan is provided to you on a contributory basis.  You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**

83500
CBH-LTD-1001

3

(23369-7)

ALBANY/DAVIS
D 0004

# Table of Contents

BENEFIT HIGHLIGHTS - SHORT TERM DISABILITY PLAN .......................................................1

BENEFIT HIGHLIGHTS - LONG TERM DISABILITY PLAN ........................................................2

CERTIFICATE OF COVERAGE...................................................................................................5

GENERAL PROVISIONS ............................................................................................................6

SHORT TERM DISABILITY COVERAGE - GENERAL INFORMATION ....................................10

SHORT TERM DISABILITY COVERAGE - BENEFIT INFORMATION ......................................11

SHORT TERM DISABILITY - CLAIM INFORMATION................................................................17

LONG TERM DISABILITY COVERAGE - GENERAL INFORMATION .......................................20

LONG TERM DISABILITY COVERAGE - BENEFIT INFORMATION .........................................21

LONG TERM DISABILITY - OTHER BENEFITS .......................................................................32

LONG TERM DISABILITY - CLAIM INFORMATION .................................................................34

LONG TERM DISABILITY - OTHER SERVICES .......................................................................37

LONG TERM DISABILITY - OTHER SERVICES .......................................................................38

GLOSSARY................................................................................................................................39

SUMMARY PLAN DESCRIPTION.............................................................................................43

ALBANY/DAVIS
D 0005

The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

The coverage described in this Certificate provides disability income coverage only. It does NOT provide basic hospital, basic medical, or major medical insurance as defined by the New York State Insurance Department.

## Prudential's Address

The Prudential Insurance Company of America
290 West Mount Pleasant Avenue
Livingston, New Jersey 07039

83500
CERT-1005

(S-2)

ALBANY/DAVIS
D 0006

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your *employment waiting period*.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan. The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in *active employment* on that date.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

83500
CGP-1001

(S-2) (23369-7)

ALBANY/DAVIS
D 0007

- the date Prudential approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or

- voluntarily canceled your coverage and are reapplying; or

- apply after any of your coverage ended because you did not pay a required contribution; or

- have not met a previous evidence requirement to become insured under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage. Evidence of insurability will be provided at your own expense.

## What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence your coverage will begin on the date you return to active employment.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary **layoff**, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

ALBANY/DAVIS
D 0008

With respect to leave under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, continuation of coverage under the plan during such leave will be governed by your Employer's policies regarding continuation of such coverage for non-FMLA leave purposes and any applicable law. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working less than 30 hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Layoff* or *leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment. An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions;

- the last day you are in active employment except as provided under the temporary absence from work provisions; or

- the date you are no longer in active employment due to a disability that is not covered under the plan.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

83500
CGP-1001

8

(S-2) (23369-7)

ALBANY/DAVIS
D 0009

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Short and Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

83500
CGP-1001

(S-2) (23369-7)

ALBANY/DAVIS
D 0010

# Short Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All hourly Employees of Montgomery.

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### Who Pays for Your Coverage?

Your coverage is paid for by your Employer.

ALBANY/DAVIS
D 0011