# Plaintiff's 5/12/06 deposition, with exhibits
## *Part 4*

*PROVISION IS SUBJECT TO STATE FILING APPROVAL*

# Short Term Disability Coverage

## BENEFIT INFORMATION

### How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 5 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period for disability due to an accident which begins while you are covered is 3 days; your elimination period for disability due to a sickness which begins while you are covered is 3 days.

---

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

---

### How Does Prudential Define Disability?

During the elimination period, you are disabled when Prudential determines that:

* you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

* you are not working at any job.

After the elimination period, you are disabled when Prudential determines that:

* you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

* you have a 20% or more loss in weekly earnings due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

---

*Material and substantial duties* means duties that:

* are normally required for the performance of your regular occupation; and

* cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

---

ALBANY/DAVIS
D 0012

## *PROVISION IS SUBJECT TO STATE FILING APPROVAL

**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**Injury** means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

## *When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. If you are disabled more than 3 weeks, benefits will be paid retroactively to the first day of disability. We will send you a payment each week for any period for which Prudential is liable.

GRP 112732

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your **weekly payment**:

1. The maximum **weekly benefit** is $285.00*. This is your **gross disability payment**.

2. Subtract from your gross disability payment any **deductible sources of income**.

That amount figured in item 2 is your weekly payment.

*Effective November 15, 2001 - $300.00.

After the elimination period, if you are disabled for less than 1 week, we will send you 1/7th of your payment for each day of disability.

**Weekly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Weekly benefit** means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

**Gross disability payment** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

**Deductible sources of income** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Weekly Earnings?

Weekly earnings means your gross weekly income from your Employer in effect just prior to your date of disability. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

ALBANY/DAVIS
D 0013

*PROVISION IS SUBJECT TO STATE FILING APPROVAL*

## What Will We Use to Determine Weekly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your weekly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

If you are disabled and return to work after satisfying the elimination period, we will send you the weekly payment if your weekly *disability earnings*, if any, are less than 20% of your weekly earnings.

If you are disabled and your weekly disability earnings are from 20% through 80% of your weekly earnings, you will receive payments based on the percentage of income you are losing due to your disability. We will follow this process to figure out your weekly payment:

1. Subtract your disability earnings from your weekly earnings.

2. Divide the answer in item 1 by your weekly earnings. This is your percentage of lost earnings.

3. Multiply your weekly payment as shown above by the answer in item 2.

This is the amount Prudential will pay you for each week.

Prudential may require you to send proof of your disability earnings each week. We will adjust your weekly payment based on your disability earnings. As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

We will not pay you for any week during which disability earnings exceed 80% of weekly earnings.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to the greatest extent possible. This would be the greatest extent of work, based on your restrictions and limitations, that you are able to do in your regular occupation, that is reasonably available. Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from week to week, Prudential may average your disability earnings over the most recent 3 weeks to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 weeks exceeds 80% of weekly earnings.

We will not pay you for any week during which disability earnings exceed 80% of weekly earnings.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1. The amount that you receive as loss of time benefits under:

83500
CBI-STD-10349 (as modified by GRP 99545-14 and GRP 112732)                        (23369-7)

ALBANY/DAVIS
D 0014

*PROVISION IS SUBJECT TO STATE FILING APPROVAL*

    (a) a workers' compensation law;

    (b) an occupational disease law; or

    (c) any other **act** or **law** with similar intent.

2. The amount that you receive or are entitled to receive as loss of time disability income payments under any state compulsory benefit act or law.

Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

---

**Law** or **act** means the original enactment of the law or act and all amendments.

---

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum weekly payment is $25.00.

Prudential may apply this amount toward an outstanding overpayment.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 2 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 2 if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each week up to the **maximum period of payment**. Your maximum period of payment is 26 weeks during a continuous period of disability.

We will stop sending you payments and your claim will end on the earliest of the following:

1. When you are able to work in your regular occupation on a **part-time basis** but you choose not to.

83500
CBI-STD-10349 (as modified by GRP 99545-14 and GRP 112732)
                14
                (23369-7)

ALBANY/DAVIS
D 0015

*PROVISION IS SUBJECT TO STATE FILING APPROVAL*

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one period of disability.

**Part-time basis** means the ability to work and earn between 20% and 80% of your weekly earnings.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot; or

- commission of a felony for which you have been convicted under state or federal law.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

GRP 99545-14

## What Happens If You Return to Work Full Time and You Become Disabled Again?

1. If your current disability is related or due to the same cause(s) as your prior disability for which Prudential made a payment:

   Prudential will treat your current disability as part of your prior claim and you will not have to complete another elimination period if you return to active employment for your Employer on a full time basis for 30 consecutive days or less.  Your disability will be subject to the same terms of the plan as your prior claim.

2. If your current disability is unrelated to your prior disability for which Prudential made a payment:

   Prudential will treat your current disability as a new claim and you will have to complete another elimination period.  Your disability will be subject to all of the plan provisions.

If you become covered under any other group short term disability plan, you will not be eligible for payments under the Prudential plan.

*PROVISION IS SUBJECT TO STATE FILING APPROVAL

## How Can Prudential Help You and Your Employer Prevent a Disability or Help You Return to Work?

Prudential has rehabilitation services available. As these services are designed to coordinate with your long term disability coverage, please see the Other Services section in your long term disability plan.

83500
CBI-STD-10349 (as modified by GRP 99545-14 and GRP 112732)
16

(23369-7)

ALBANY/DAVIS
D 0017

# Short Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given as soon as reasonably possible..

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1) That you are under the *regular care* of a *doctor*.

(2) The appropriate documentation of your weekly earnings.

(3) The date your disability began.

(4) Appropriate documentation of the disabling disorder.

(5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

(6) The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

(7) The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

*Regular care* means:

83500
CCLM-STD-1009

(S-1)

ALBANY/DAVIS
D 0018

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

83500
CCLM-STD-1009

(S-1)

ALBANY/DAVIS
D 0019

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

83500
CCLM-STD-1009

19

(S-1)

ALBANY/DAVIS
D 0020

# Long Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All hourly Employees of Montgomery.

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### What Is Your Employment Waiting Period?

The following period of continuous full-time service with the Employer:

For Employees who are full-time with five years of service and in the Covered Classes on August 1, 1999 - None.

For all other Employees - Five years.

### Who Pays for Your Coverage?

Your coverage is paid for by you.  Your Employer will inform you of the amount of your contribution when you enroll.

83500
CGI-LTD-1001

(S-3) (23369-7)

ALBANY/DAVIS
D 0021

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

---

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on

ALBANY/DAVIS
D 0022

that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 26 weeks.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1. Multiply your monthly earnings by 65%.

2. The maximum *monthly benefit* is $3,500.00.

3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your *gross disability payment*.

4. Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Monthly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

83500
CBI-LTD-1017 (as modified by GRP 99545-13)

(23369-7)

ALBANY/DAVIS
D 0023

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability. Monthly earnings includes the average commissions earned per month during the shorter of: (i) the 12 month period just prior to your date of disability; or (ii) your period of employment. Monthly earnings does not include income received from bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

## What Will We Use to Determine Monthly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.

2. Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

During the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Beyond 24 months of disability payments, if your monthly disability earnings exceed 60% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

---

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations:

- During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

---

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if:

- During the first 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings; or

- Beyond 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 60% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed the above amounts.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1. The amount that you receive as loss of time benefits under:

    (a) a workers' compensation law;

    (b) an occupational disease law; or

    (c) any other *act* or *law* with similar intent.

83500
CBI-LTD-1017 (as modified by GRP 99545-13)

(23369-7)

ALBANY/DAVIS
D 0025

2.  The amount that you receive or are entitled to receive as loss of time disability income payments under any:

   (a) state compulsory benefit act or law;

   (b) automobile liability insurance policy;

   (c) other group insurance plan; or

   (d) governmental retirement system as the result of your job with your Employer.

3.  The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar plan or act.

Amounts paid to your former spouse or to your children living with such spouse will not be included.

4.  The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving payments under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar plan or act.

Benefits paid to your former spouse or to your children living with such spouse will not be included.

5.  The amount that you:

   (a) receive as disability payments under your Employer's retirement plan;

   (b) voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

   (c) receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

Amounts under (b) above do not include early retirement payments if the payments reduce the retirement benefits under your Employer's retirement plan.

83500
CBI-LTD-1017 (as modified by GRP 99545-13)

(23369-7)

ALBANY/DAVIS
D 0026

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6. The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

7. The amount that you receive from a partnership, proprietorship or any similar draws.

8. The amount identified as earnings replacement or disability income benefits that you receive, due to your disability, from a third party by judgment, settlement or otherwise.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

- 401(k) plans;

- profit sharing plans;

- thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

83500
CBI-LTD-1017 (as modified by GRP 99545-13)

26

(23369-7)

ALBANY/DAVIS
D 0027

- a retirement plan from another Employer;

- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive Certain Increases from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment due to a cost of living increase from that source.

Once Prudential has subtracted your Social Security income from your gross disability payment, Prudential will not further reduce your payment by the amount of any increase in your Social Security income that is due to a change in the United States Social Security Act.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 2 or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 2 or 3 in the deductible sources of income section if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the **maximum period of payment**. Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Period of Benefits |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one period of disability.

**Part-time basis** means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities which, as determined by Prudential, are due in whole or part to **mental illness** have a limited pay period during your lifetime.

The limited pay period for mental illness is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1. If you are **confined** to a **hospital or institution** at the end of the 24 month period, Prudential will continue to send you payments during your **confinement**.

If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2.  In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;

- trauma;

- viral infection;

- Alzheimer's disease; or

- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot; or

- commission of a felony for which you have been convicted under state or federal law.

Your plan does not cover a disability which:

- begins within 12 months of the date your coverage under the plan becomes effective; and

- is due to a pre-existing condition.

83500
CBI-LTD-1017 (as modified by GRP 99545-13)

(23369-7)

ALBANY/DAVIS
D 0030

But, the 12 month period will be reduced if:

- you were covered under a previous long term disability plan;

- the coverage was continuous to a date not more than 60 days prior to the date you entered a Covered Class under Prudential's Group Contract; and

- that coverage was determined by Prudential to be substantially similar to coverage under this Group Contract.

In this case, it will be reduced by the time period during which you were continuously covered under the previous plan.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if:

1. You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

2. You had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan; or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase if your disability begins during the 12 month period starting with the date the increase in benefits would have been effective. The increase will not take effect until your disability ends.

## How Does the Pre-Existing Condition Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and

- you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1. If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2.  If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3.  If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change.

GRP 99545-13

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

*   you were continuously insured under this plan for the period between your prior claim and your current disability; and

*   your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

*Recurrent disability* means a disability which is:

*   caused by a worsening in your condition; and

due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die? (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a lump sum benefit equal to 6 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

### What Insurance Is Available If You End Employment? (Conversion)

If you end employment with your Employer, your coverage under the plan will end. You may be eligible to purchase insurance under Prudential's group conversion policy. To be eligible, you must have been insured under your Employer's group plan for at least 12 consecutive months. We will consider the amount of time you were insured under the Prudential plan and the plan it replaced, if any.

You are not eligible to apply for coverage under Prudential's group conversion policy if:

- you are or become insured under another group long term disability plan within 31 days after your employment ends;

- you are disabled under the terms of the plan;

- you are age 70 or more when your employment ends;

- your coverage under the plan ends for any of the following reasons:

  -- the plan is canceled;

  -- the plan is changed to exclude the group of employees to which you belong;

  -- you are no longer in an eligible group;

  -- you retire;

  -- you fail to pay the required premium under this plan.

ALBANY/DAVIS
D 0033

You must apply for insurance under the conversion policy and pay the first premium to Prudential within 31 days after the date your employment ends. Evidence of insurability will be required for certain higher amounts of monthly payments.

Prudential will determine the coverage you will have under the conversion policy. The conversion policy may not be the same coverage we offered you under your Employer's group plan. It may be any form of conversion plan that we then make available. The benefits will comply with any state laws or regulations that may apply.

Your amount of coverage under the conversion plan will not be more than your amount under this plan when your coverage ends. It may be lower than under this plan.

Your rates for the conversion plan will be based on Prudential's rate as it applies to the form and amount of insurance it provides, the premium period and your age at the time of conversion. Your premiums will not be due less often than quarterly, unless you agree to another frequency.

83500
COTB-LTD-1001

(S-4)(23369-7)

ALBANY/DAVIS
D 0034

# Long Term Disability Coverage

### CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given as soon as reasonably possible.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1) That you are under the *regular care* of a *doctor*.

(2) The appropriate documentation of your monthly earnings.

(3) The date your disability began.

(4) Appropriate documentation of the disabling disorder.

(5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

(6) The name and address of any *hospital or institution* where you received treatment, including all attending doctors.

(7) The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of

83500
CCLM-LTD-1009

(S-2)

ALBANY/DAVIS
D 0035

continuing disability.  Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

83500
CCLM-LTD-1009

(S-2)

ALBANY/DAVIS
D 0036

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

83500
CCLM-LTD-1009

36

(S-2)

ALBANY/DAVIS
D 0037

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Portable Adaptive Equipment to Allow You to Work?

Portable adaptive equipment might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. At your option, one of our designated professionals will assist you and your Employer to identify portable adaptive equipment we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse you for the cost of the portable adaptive equipment up to the greater of:

- $1,000; or

- the equivalent of 2 months of your monthly benefit.

The portable adaptive equipment provided under this coverage is not the property of your Employer. It is your property.

This benefit is available to you on a one time only basis.

### How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

ALBANY/DAVIS
D 0038

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a *rehabilitation program* available.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a rehabilitation program. If the rehabilitation program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The rehabilitation program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved rehabilitation program.

*Rehabilitation program* means a program designed to assist you to return to work.

# Glossary

***Active employment*** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

***Confined or confinement*** for this section means a hospital stay of at least 8 hours per day.

***Contract holder*** means the Employer to whom the Group Contract is issued.

***Deductible sources of income*** means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Eligible survivor*** means your spouse, if living; otherwise, your children under age 25.

***Elimination period*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

83500
CGL-1015 (as modified by GRP 99648-7)

(23369-7)

ALBANY/DAVIS
D 0040

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Employer* means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of Insurability will be provided at your own expense.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index.  Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause.  Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

*Insured* means any person covered under a coverage.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement.  Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

ALBANY/DAVIS
D 0041

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**Maximum period of payment** means the longest period of time Prudential will make payments to you for any one disability.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Monthly benefit** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**Monthly earnings** means your gross monthly income from your Employer as defined in the plan.

**Monthly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**Part-time basis (STD)** means the ability to work and earn between 20% and 80% of your weekly earnings.

**Part-time basis (LTD)** means the ability to work and earn 20% or more of your indexed monthly earnings.

**Payable claim** means a claim for which Prudential is liable under the terms of the Group Contract.

**Plan** means a line of coverage under the Group Contract.

**Pre-existing condition** means:

a condition for which you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines or followed treatment recommendation for your condition during the given period of time as stated in the plan; or

you had symptoms for which an ordinarily prudent person would have consulted a health care provider during the given period of time as stated in the plan.

**Recurrent disability** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

**Regular care** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or

83500
CGL-1015 (as modified by GRP 99648-7)

(23369-7)

ALBANY/DAVIS
D 0042

experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

**Regular occupation** means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Rehabilitation program** means a program designed to assist you to return to work.

**Retirement plan** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**We, us, and our** means The Prudential Insurance Company of America.

**Weekly benefit** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

**Weekly earnings** means your gross weekly income from your Employer as defined in the plan.

**Weekly payment** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

**You** means a person who is eligible for Prudential coverage.

ALBANY/DAVIS
D 0043

The Summary Plan Description

is not part of the

Group Insurance Certificate.

It has been provided by

your Employer and included in

your Booklet-Certificate

upon the Employer's request.

SPD

(23369-7)

ALBANY/DAVIS
D 0044

# SUMMARY PLAN DESCRIPTION

This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a "Summary Plan Description" which describes the plan and informs you of your rights under it.

**Plan Name**

Short Term Disability and Long Term Disability Coverage for All hourly Albany International Corp Employees of Montgomery

**Plan Number**

526

**Type of Plan**

Employee Welfare Benefit Plan

**Plan Sponsor**

Albany International Corp
1373 Broadway
Albany, New York  12204

**Employer Identification Number**

14-0462060

**Plan Administrator**

Albany International Corp
Attention:  Human Resources
1373 Broadway
Albany, New York  12204

518-445-2256

**Agent for Service of Legal Process**

Albany International Corp
Attention:  Human Resources
1373 Broadway
Albany, New York  12204

**Plan Year Ends**

June 30th

**Plan Benefits Provided by**

The Prudential Insurance Company of America
Prudential Plaza
Newark, New Jersey  07102

SPD

(23369-7)

ALBANY/DAVIS
D 0045

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

## Loss of Benefits

You must continue to be a member of the class to which this plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of your benefits. It is intended that this plan will be continued for an indefinite period of time. But, the employer reserves the right to change or terminate the plan. This booklet describes your rights upon termination of the plan.

## Claim Procedures

### 1. Determination of Benefits

Prudential shall notify you of the claim determination within 45 days of the receipt of your claim. This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan. A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period. This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan. A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed. However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial. The notice will be written in a manner calculated to be understood by you and shall include:

(a) the specific reason(s) for the denial,

(b) references to the specific plan provisions on which the benefit determination was based,

(c) a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

(d) a description of the Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and

(e) if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

### 2. Appeals of Adverse Determination

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been

SPD

(23369-7)

ALBANY/DAVIS
D 0046

denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by the Prudential Appeals Review Unit. The claim decision will be made by a member of the Prudential Claims Management Team. The Prudential Appeals Review Unit and Claims Management Team members are made up of individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

The Prudential Appeals Review Unit shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that the Prudential Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a)  the specific reason(s) for the adverse determination,

(b)  references to the specific plan provisions on which the determination was based,

(c)  a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d)  a description of Prudential's review procedures and applicable time limits,

(e)  a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f)  a statement describing any appeals procedures offered by the plan, and your right to bring a civil suit under ERISA.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your

SPD

46

(23369-7)

ALBANY/DAVIS
D 0047

request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a second appeal, the Prudential Appeals Review Unit will again conduct a full review of the claim file and any additional information submitted. The claim decision will be made by a member of the Prudential Senior Claims Management Team. The Appeals Unit and Senior Claims Management Team member would not have been involved in the initial benefit determination or in the first appeal.

The Prudential Appeals Review Unit shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter as well as your right to appeal the decision to Prudential's Appeal Committee. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied upon appeal.

If the second appeal of your benefit claim is denied or if you do not receive a response to your second appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your authorized representative may make a third appeal of your denial in writing to the Prudential Appeals Committee within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your third appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Upon receipt of a third appeal, the claim will be directed to Prudential's Appeals Committee by a member of the Prudential Senior Claims Management Team. This Committee will be composed of three members of the Senior Claims Management Team who have not been involved in any previous appeals.

SPD

47

(23369-7)

ALBANY/DAVIS
D 0048

The Prudential Appeals Committee shall make a determination on your third claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to 90 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which the Appeals Review Unit expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to the third level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a third level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the third level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a third time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

## Rights and Protections

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

- Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

SPD

(23369-7)

ALBANY/DAVIS
D 0049

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

SPD

(23369-7)

ALBANY/DAVIS
D 0050

23369,STD-LTD,Montgomery Hrly,Ed.12-2001,7

ALBANY/DAVIS
D 0051

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
3381 Atlanta Hwy
Montgomery, AL 36109-2746

Date: AUG 1 6 2005

Dora J. Davis
5702 Red Barne Rd
Montgomery, AL 36116



DEFENDANT'S
EXHIBIT

Davis

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. My decision is based on your disability insurance benefits application filed on October 16, 2003.

I announced the basis for my decision at the hearing held on July 25, 2005. I adopt here those findings of fact and reasons.

To summarize briefly, I found you disabled on August 21, 2003 because of congestive heart failure with cardiomyopathy, Fibromyalgia, bulging discs, degenerative disc disease with facet hypertrophy L5-S1, chronic low back pain, neck pain, anxiety, and depression so severe that you are unable to perform any work existing in significant numbers in the national economy.

In November 2004, your treating cardiologist, Dr. Darryl Hamilton, completed a Disability Questionnaire and stated that you were not able to work a full time job and that your condition is permanent or will last at least 12 months. Dr. Hamilton reported his diagnosis as Congestive Heart Failure, New York Heart Association Classification III. Dr. Hamilton opined that the date of onset for the above described condition was before November 1999. (Exhibit 24F)

On July 20, 2005, Dr. Steven L. Allen, your treating physician, completed a Medical Source Statement in which he opined that you could lift and/or carry 10 pounds occasionally to five pounds frequently; sit for three to four hours in an 8-hour day and stand or walk three to four hours in an 8-hour day; in addition to a morning break, a lunch break, and an afternoon break (scheduled at about two hour intervals) you would need about an additional hour of rest; you should avoid increased temperature as this will aggravate myalgias; you can occasionally perform activities of pushing and pulling movement (arm and/or leg controls), gross manipulation (grasping, twisting, and handling), fine manipulation (finger dexterity), and operate motor vehicle; and rarely perform activities of climbing (stairs or ladders) and balancing, bending and/or stooping movements, reaching (including overhead), and work with or around hazardous machinery. Dr. Allen opined that you would likely be absent from work three days per month as a result of your impairments and/or treatment. Dr. Allen reported his diagnosis as Fibromyalgia of several years duration. Dr. Allen stated that you have decreased strength and decreased abduction. Dr. Allen stated that your ability to perform the activities noted above would be further reduced by pain. Dr. Allen rated your pain as moderate for several years. Dr.

Dora J. Davis (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)

Allen further stated that your medications would adversely affect your ability to work. (Exhibit 26F)

Dr. James N. Anderson, a medical expert, testified the record establishes that you have medically determinable impairments, including mental and physical problems. The records show treatment for chronic back pain, heart problems, anxiety, and depression. He opined that these impairments did not meet or equal in severity the criteria of any listed impairment. However, Dr. Anderson testified that with the combination of problems you have, you could not work. He also averred that this level of severity had been attained as of the alleged onset date. I give substantial weight to this opinion as it is well supported by objective medical evidence and is consistent with the record as a whole.

Dr. Doug McKeown, a medical expert, testified that the information in the file supports disability for you.

Although you do not have an impairment or combination of impairments that meets or equals in severity one set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, the evidence demonstrates that you have been unable to perform basic work activities on a regular and continuing basis at a sedentary exertional level in a competitive environment since the alleged onset date.[1] Pursuant to Social Security Rulings 96-8p and 96-9p, I find that you are unable to return to any past relevant work, and the occupational base is so severely eroded that there are no other jobs existing in significant numbers in the national economy that you can perform.[2] I have also considered Social Security Ruling 83-14, which states that exposure to particular work stresses may not be medically sustainable for some persons with mental impairments, and that some conditions may also affect a person's exertional capacity. SSR 83-14 notes jobs at various levels of complexity require mental functions such as intellectual competence and ability to function in terms of behavior, affect, thought, memory, orientation and contact with reality. In fact, SSR-83-14 states that an entire range of jobs can be severely compromised. Thus, you have been disabled within the meaning of the Social Security Act since the alleged onset date.

If you want more information about my decision, you or your representative should file a written request for this information at any local Social Security office or a hearing office. Please include the Social Security number shown above on your request. If you ask for it, we will provide you with a record of my oral decision at the hearing.

---

[1] A "regular and continuing basis" means eight hours a day for five days a week or an equivalent work schedule (Social Security Ruling 96-8p).
[2] The ability to work eight hours a day for five days a week is not always required when evaluating an individual's ability to do past relevant work, but this claimant has no past relevant work that was substantial gainful activity performed as part-time, sedentary work. Thus, she is unable to return to any past relevant work as she cannot work at a sedentary exertional level on a regular and continuing basis (Social Security Ruling 96-8p).

Warning letter issued from HR *DBC* Date *8/27/03* Warning received by *NJ* Date *9/29/2003*

# Employee Documentation

**DORA DAVIS**    Dept: **Nap Seaming**    Date of Incident Initiating Warning: __03/08/20__

2nd Written Warning

\* See note in "Team Leader Comments" section below.
*IB.*
*9-27-03*

### DESCRIPTION OF INCIDENT (INCLUDE DETAILS)

This is a written warning for poor attendance under the plant attendance policy. You now have 4 more unauthorized occurrences and therefore are receiving this written warning, which will be an active warning until it drops off on __04/08/19__

As stated under the current attendance policy, which became effective on January 1, 2000, written warnings are issued on the 4th occurrence. After the next 4 occurrences within a 12-month period, from the date of the occurrence which prompted the last warning, another written warning will be issued. Another 4 occurrences within a 12-month period, from the date of the occurrence which prompted the first warning, will prompt another written warning. This warning will result in a suspension and possible termination.

You are being advised that your attendance record has placed your job in jeopardy and it is sincerely recommended that you work regularly and avoid future unauthorized occurrences so as to protect your job. This is your last and final warning for attendance and if you have a further four occurrences before your first warning drops off, the language in the previous paragraph will apply.

If the employee is not present to receive the warning we may mail it to the employee with a copy to the Union.

### THE SPECIFIC OCCURRENCES ARE:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 02/10/18 ABS | 1 | 1 | 02/11/07 DIS | 0.5 | 1.5 | 02/11/08 ABS | 1 | 2.5 |
| 03/03/03 ABS | 1 | 3.5 | 03/04/17 ABS | 1 | 4.5 | 03/05/09 ABS | 1 | 5.5 |
| 03/07/25 ABS | 1 | 6.5 | 03/07/29 ABS | 1 | 7.5 | 03/08/20 ABS | 1 | 8.5 |

I have been informed of the Family Medical Leave Act and was offered the oppurtunity to apply it to occurances as provided in our FMLA policy. _____ Employee Signature

Please check one of the following:

None of these occurences are for FMLA reasons (_____) _____ Employee Signature

FMLA related occurrences needing to be addressed (_____)

Please list _____

**Team Leader Comments:** NOTE: 9/1/03 REVIEWED WITH DORA & NORMA, DORA REFUSED TO SIGN WARNING — Ed Kelly
This written warning letter was issued on 8-27-03. Dora has been on inactive status or vacation since 8-22-03 and therefore, has not been here to receive the warning. Now that Dora has returned to work, the warning is being issued to her.
T. Bryant
9-29-03

**Employee Comments:**

Employee advised that a copy of this document will be placed in his or her personnel file and that copies will be distributed as listed below.

I have read this documentation and agree the occurrences have been correctly charged.

**DEFENDANT'S EXHIBIT**

Supervisor's Signature *Ed Kelly*
Date: *10/1/03*

Employee's Signature *Davis*
Date: _____    7

Distribution:
Please Return the original to Human Resources Manager for Distribution
Plant Manager    Group Leader    Union Business Agent    Job Steward    Personnel File    Employee    TTB

ALBANY/DAVIS
D 0093

# Attendance Report

**Date Range:** From: 02/08/24 To: 03/08/24

Tuesday, September 09, 2003



## DORA DAVIS

**Emp # 00891**

| Date | Time | Description | # of Occurrences | Running Sum | Warnings | Date |
|------|------|-------------|------------------|-------------|----------|------|
| 02/08/29 | 8 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/08/30 | 8 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/09/08 | 8 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/09/09 | 8 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/09/10 | 8 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/09/18 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 0.00 | | |
| 02/09/19 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 0.00 | | |
| 02/09/22 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 0.00 | | |
| 02/10/17 | 4 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/10/18 | 0.73 | WORKMANS COMP | 0.00 | 0.00 | | |
| 02/10/18 | 7 | ABSENCE | 1.00 | 1.00 | | |
| 02/10/21 | 1.44 | WORKMANS COMP | 0.00 | 1.00 | | |
| 02/10/22 | 1.54 | WORKMANS COMP | 0.00 | 1.00 | | |
| 02/10/23 | 1.51 | WORKMANS COMP | 0.00 | 1.00 | | |
| 02/10/24 | 1.11 | WORKMANS COMP | 0.00 | 1.00 | | |
| 02/11/07 | 1.81 | DISMISSAL | 0.50 | 1.50 | | |
| 02/11/08 | 5.97 | ABSENCE | 1.00 | 2.50 | | |
| 02/11/12 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 02/11/13 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 02/11/14 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | RW | |
| 02/11/15 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 02/11/28 | 8 | HOLIDAY | 0.00 | 2.50 | | |
| 02/11/29 | 8 | HOLIDAY | 0.00 | 2.50 | | |
| 02/12/09 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 02/12/10 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 02/12/23 | 8 | NO WORK AVAILABLE | 0.00 | 2.50 | | |
| 02/12/24 | 48 | HOLIDAY | 0.00 | 2.50 | | |
| 03/01/01 | 8 | HOLIDAY | 0.00 | 2.50 | | |
| 03/01/17 | 2.53 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 03/01/20 | 8 | FAMILY MEDICAL LEAVE | 0.00 | 2.50 | | |
| 03/01/21 | 32 | VACATION | 0.00 | 2.50 | | |
| 03/01/27 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/01/28 | 0.56 | WORKMANS COMP | 0.00 | 2.50 | | |
| 03/01/29 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/01/30 | 0.62 | WORKMANS COMP | 0.00 | 2.50 | | |

Tuesday, September 09, 2003

Page 1 of 2

ALBANY/DAVIS
D 0094

| Date | Time | Description | # of Occurrences | Running Sum | Warnings | Date |
|---|---|---|---|---|---|---|
| 03/01/31 | 0.59 | WORKMANS COMP | 0.00 | 2.50 | | |
| 03/02/05 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/02/06 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/02/07 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/02/12 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/02/14 | 8 | VACATION | 0.00 | 2.50 | | |
| 03/03/03 | 8 | ABSENCE | 1.00 | 3.50 | | |
| 03/03/06 | 8 | VACATION | 0.00 | 3.50 | | |
| 03/03/19 | 3 | WORKMANS COMP | 0.00 | 3.50 | | |
| 03/03/28 | 8 | VACATION | 0.00 | 3.50 | | |
| 03/04/02 | 8 | VACATION | 0.00 | 3.50 | | |
| 03/04/07 | 4.55 | WORKMANS COMP | 0.00 | 3.50 | | |
| 03/04/16 | 8 | VACATION | 0.00 | 3.50 | | |
| 03/04/17 | 8 | ABSENCE | 1.00 | 4.50 | | rw |
| 03/05/09 | 6 | ABSENCE | 1.00 | 5.50 | W | 03/04/17 |
| 03/05/14 | 8 | FUNERAL LEAVE-UNPAID | 0.00 | 5.50 | | |
| 03/05/15 | 8 | FUNERAL LEAVE-PAID | 0.00 | 5.50 | | |
| 03/05/16 | 8 | FUNERAL LEAVE-UNPAID | 0.00 | 5.50 | | |
| 03/05/19 | 1.58 | FAMILY MEDICAL LEAVE | 0.00 | 5.50 | | |
| 03/05/26 | 8 | HOLIDAY | 0.00 | 5.50 | | |
| 03/06/26 | 8 | NO WORK AVAILABLE | 0.00 | 5.50 | | |
| 03/06/27 | 8 | NO WORK AVAILABLE | 0.00 | 5.50 | | |
| 03/07/13 | 40 | NO WORK AVAILABLE | 0.00 | 5.50 | | |
| 03/07/18 | 8 | NO WORK AVAILABLE | 0.00 | 5.50 | | |
| 03/07/25 | 5.82 | ABSENCE | 1.00 | 6.50 | | |
| 03/07/28 | 8 | NO WORK AVAILABLE | 0.00 | 6.50 | | |
| 03/07/29 | 7.16 | ABSENCE | 1.00 | 7.50 | | |
| 03/07/30 | 8 | NO WORK AVAILABLE | 0.00 | 7.50 | | |
| 03/07/31 | 8 | NO WORK AVAILABLE | 0.00 | 7.50 | | |
| 03/08/01 | 8 | NO WORK AVAILABLE | 0.00 | 7.50 | | |
| 03/08/04 | 0.46 | WORKMANS COMP | 0.00 | 7.50 | | |
| 03/08/14 | 0.82 | WORKMANS COMP | 0.00 | 7.50 | | |
| 03/08/15 | 5.6 | WORKMANS COMP | 0.00 | 7.50 | | |
| 03/08/18 | 8 | WORKMANS COMP | 0.00 | 7.50 | | |
| 03/08/19 | 8 | WORKMANS COMP | 0.00 | 7.50 | | |
| 03/08/20 | 8 | ABSENCE | 1.00 | 8.50 | W | 03/08/20 |
| 03/08/22 | 8 | INACTIVE STATUS | 0.00 | 8.50 | | |

| Total Time | 560.4 | | | | | |
|---|---|---|---|---|---|---|

| Total Occurrences | 8.5 |
|---|---|
| Total Warnings | 2 |

Tuesday, September 09, 2003

ALBANY/DAVIS
D 0095

| EMP NO | PLANT | DEPT | JOB NO | WEEK ENDING | | NO |
|---|---|---|---|---|---|---|
| **00891** | | | | **w/e 2003/08/24** | | |
| **DAVIS, DORA** | | | | | | |
| **1500** | | | | | HRS. CD | |

8 / 18 / 03  wc 8
8 / 19 / 03  wc 3
8 / 20 / 03  Abs 3
8 / 22 / 03  ——  5
                INA  JB

**ADD TO PAY**    $

| | R | O | D | HOURS ABSENT |
|---|---|---|---|---|
| 1 | | | | 8 Mon W.C |
| | | | | 8 Tue — wc |
| 2 | | | | SCHEDULED HOURS   WC INA |
| | | | | 8 Wed - Abs. JB |
| 8 | | | | 40 |

| 8 | Mon | WC | | | |
|---|---|---|---|---|---|
| 8 | Tue | Abs | | | |
| 8 | Wed | WC | | | |
| 8 | Thu 070 | | | wc291 | |
| 8 | Fri | ~~ttg~~ Inactive status | | | |
| | | | | | J.B. |

SIGNATURE ✗ _Smith_  8

ALBANY/DAVIS
D 0096

EMP NO    PLANT

00891    w/e 2003/08/03
DAVIS, DORA
1500

7/28/03    NW    8
7/29/03    Abs    7.16
7/30    NW    8
7/31    NW    8
8/1/03    NW    8

ADD TO PAY    $

| R | D | D | HOURS ABSENT |
|---|---|---|---|
| 1 | | | 7.16 diem Tue |
| 2 | | | 8 NWD Mon. |
| | | | 8 Wed Thru Thur 8 Fri |
| 3 | .84 | | NWD |
| | | | 40 |

.84    2300    to    2384

SIGNATURE  X  B. Smith    .84

ALBANY/DAVIS
D 0097

| EMP. NO. | PLANT | DEPT. | JOB NO. | WEEK ENDING | | NO. |
|---|---|---|---|---|---|---|
| NA **00891** | | | | **w/e 2003/07/27** | | |
| **DAVIS, DORA** | | | | | | HRS. CD |
| DEPT **1500** | | | | | | |

| | | | | |
|---|---|---|---|---|
| 7/25/03 | | Dis | 5 | 82 |
| | | Abs | | |

**ADD TO PAY** $

| 34.18 | 0 | 0 | HOURS ABSENT: Fri diem dr appt. |
|---|---|---|---|
| | | | 5.82 |
| 2 | | | SCHEDULED HOURS |
| 3 | | | 40 |

| 8 | M 0649 | | M 1501 | |
|---|---|---|---|---|
| 8 | Tu 0640 | | Tu 1501 | |
| 8 | W 0649 | | W 1501 | |
| 8 | Th 0640 | | Th 1501 | |
| 2.18 | Fr 0649 | Fr 0918 | | |
| | | | | |
| SIGNATURE X Smith | | | 34.18 | |

ALBANY/DAVIS
D 0098

| TEMP. NO. | PLANT | DEPT | JOB NO | WEEK ENDING |
|---|---|---|---|---|

**00891**  w/e **2003/05/11**
**DAVIS, DORA**
**1500**

T HRS

5/9/03   Abs   6

**ADD TO PAY**   $

| | R | O | D | HOURS ABSENT |
|---|---|---|---|---|
| 1 | | | | 6 ABS   5/9 |
| 2 | | | | SCHEDULED HOURS |
| 3 | 34 | | | 40 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | LEFT SICK | |
| | | | | | |
| | | | | | |

SIGNATURE  X  TPW 34



DEFENDANT'S EXHIBIT

*Davis  / 3*

**Appleton Wire Division**
Post Office Box 11068
Montgomery, Alabama 36111-0068
Tel. 334 | 288 0040
FAX 334| 288 0582



**ALBANY**
*INTERNATIONAL*

## INTER-OFFICE MEMORANDUM

| | | | |
|---|---|---|---|
| **TO:** | Dora Davis | **DATE:** | October 29, 2003 |
| **SUBJECT:** | Current Standing Under Plant Attendance Policy | **FROM:** | Ted Bryant |
| **COPIES:** | Bob Hampsey, Norma Heath, Jeff Johnston, Personnel File | | |

The purpose of this memorandum is to clarify your current standing under the plant attendance policy. You had two current written warnings which were initiated by occurrences on April 17, 2003 and August 20, 2003.

The warning issued in April included an occurrence from November 8, 2002, when you left work to go to the emergency room. We have determined that the occurrence of November 8, 2002, should be classified as worker's compensation and is therefore an uncounted occurrence. This results in the warning from April being rescinded.

The warning initiated in August is still in effect. We did receive a letter of protest from the Union regarding this warning. The protest letter has been placed in your personnel file.

Since the last written warning was issued to you, you have accumulated three more attendance occurrences from time missed on September 29, 2003, September 30, 2003 and October 1, 2003. If you have another occurrence prior to August 20, 2004, another written warning will be issued.

In summary, your current attendance record is as follows:

- One current written warning initiated on August 20, 2003 is active in your file

- Three more occurrences have accumulated toward another written warning (another occurrence prior to August 20, 2004 will initiate another written warning)

We value your years of service with our company and it is our sincere hope that your future attendance record will stay within the acceptable guidelines of our plant attendance policy.

TTB/jes

*10-29-03   2:00 p.m. Upstairs Conference Room*
*Present at meeting: Dora Davis, Norma Heath,*
*Jeff Johnston, Bob Hampsey, Ted Bryant*
*Reviewed this document and asked if there*
*were any questions. There were no questions*
                                    *Ted Bryant*

NY/DAVIS
D 0199

**Appleton Wire Division**
Post Office Box 11066
Montgomery, Alabama 35111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582





Davis 11

Ms. Dora Davis

October 29, 2003

Re: Return to Work

Dear Ms. Davis:

We have received medical documentation that your appointment with Dr. Wade in Birmingham on October 27, 2003, has resulted in your being released back to work. This is the most recent step in the worker's compensation process, which has included your choice of a doctor from a panel of four on two separate occasions. The company has fulfilled all obligations and then some.

Notwithstanding your medical evaluations, you have expressed to us on several occasions your belief that you are unable to perform the essential elements of your job without severe pain and numbness in numerous parts of your body. Recently, you documented severe pain complaints in multiple body parts on your daily time sheets after working all or a portion of your shift. In addition, you have left work or failed to report to work without medical authorization on several occasions because of severe pain complaints.

We have conflicting conclusions from you and your treating physicians regarding your medical condition. We cannot resolve this conflict between you and your doctors. However, each time you leave work or fail to report to work without medical authorization, you are in violation of the plant's attendance policy. Continued unauthorized absences beyond what is allowed under the attendance policy will result in termination of your employment.

In order to protect you from violation of the attendance policy and to protect you from injury or damage to your health, we have used an "inactive" work status to allow you to be out of work without medical authorization pending resolution of the disagreement between you and your physicians regarding your medical condition. Although the time out of work while you have been in an inactive status has been without pay, it is the only way we knew to help you avoid violation of the attendance policy.

Please be aware that the choice is yours. If you feel that you are physically capable, you may return to work, if you so elect. If you do return to work, you will be

ALBANY/DAVIS
D 0200

Ms. Dora Davis
Page 2

October 29, 2003

expected to work your regular work schedule and comply with the attendance
policy. Continued violations of the attendance policy resulting in three written
current warnings for attendance will result in termination of your employment. We
do not want that to happen. You are a valued employee with more than twenty-four
years of service.

If you feel that you are not capable of returning to work without causing harm to
your health, we will allow you to remain in an "inactive" status for a reasonable
time in the hope that you will be able to resolve your medical problems and return
to work.

Please keep us informed of your medical status and intentions regarding your return
to work.

Sincerely yours,

*Ted Bryant*

Ted Bryant
Human Resources Manager

/jes

cc:    Bob Hampsey
       Norma Heath
       Jeff Johnston
       Personnel File

*Dora Davis informed us during the meeting that she was resigning from her employment with Albany International. Those people present were Norma Heath (Dora's union Steward), Jeff Johnston, Bob Hampsey and Ted Bryant.*
*Ted Bryant 10-29-03*

IN THIS MEETING HELD ON OCTOBER 29th @ 2:00 PM, ATTENDED
BY DORA DAVIS, NORMA HEATH, BOB HAMPSEY, TED BRYANT, &
JEFF JOHNSTON, DORA STATED SHE HAS APPLIED FOR
DISABILITY WITH THE STATE AND WILL NOT PURSUE
LTD THROUGH THE COMPANY. BASED ON THESE NEW
FACTS, WE INFORMED DORA THAT THE INACTIVE
STATUS WAS NO LONGER AVAILABLE AND THAT
SHE WAS TO RETURN FROM LEAVE ON HER
SCHEDULED SHIFT ON ~~~~~~~ THURSDAY,
OCTOBER 30, 2003 -

ALBANY/DAVIS
D 0201

*Dora Davis*
*Resignation effective*
*10-29-03*

## Albany International Exit Interview

Date **10-29-03**

- ✓ Voluntary Resignation Form *(Dora did not want to fill this out)*
- ✓ Paychecks *No paychecks due*
- ✓ Mailing address: *5702 Red Barn Road Montgomery, Al. 36116*
- ✓ Security Badge Card (Notify Gay & Kelley) *Received this from Dora*
- ✓ Health Care Card ⎫ *Dora does not use*
- ✓ Prescription Drug Card ⎭ *our health care plan*
- ✓ Computer Loan *Does not have a computer loan*
- ✓ Tool Reimbursement *(Not applicable)*
- ✓ 401K (Roller over forms or distribution) *Dora to contact Vanguard (gave*
- ✓ Vacation *No vacation remaining*   *her 1-800-523-118.*
- ✓ Cobra (papers will come from AI Corp. *Dora does not use our health care*
- ✓ Locker (clean out) ⎫ *Dora said there are no*   *plan*
- ✓ Tool Box ⎭ *personal items in her locker or tool box*
- ✓ Future references (only give out basic information) *Reviewed this policy*
- **TB** ✓ Notification to AI Corp. ~~(Lynda)~~ *Gay Drake/Ted Bryant to do this*
- **BH** ✓ PCN
- **TB** ✓ Time Card

Employee
Comments: _Dora Davis_ _____

_____

_____

_____

Employee Signature

*Ted Bryant*
Human Resources Signature
**10-29-03**



DEFENDANT'S
EXHIBIT

*Davis 12*

ALBANY/DAVIS
D 0197

Appleton Wire Division
Post Office Box 11066
Montgomery, Alabama 36111-0066
Tel. 205 | 288 0040
FAX 205 | 288 0582



I, _____ DO HEREBY NOTIFY
ALBANY INTERNATIONAL, APPLETON WIRE DIVISION OF MY
VOLUNTARY RESIGNATION EFFECTIVE _____
FOR THE FOLLOWING REASON.

_____
_____
_____
_____

_____        _____
SIGNATURE                         DATE

*We gave Dora Davis the opportunity to fill out this form if she so desired. She chose not to do so.*

*Ted Bryant*
*10-28-03*

*Rbt Hayes*
*03/10/29*

**DEFENDANT'S
EXHIBIT**

Davis  B

ALBANY/DAVIS
D 0198

Albany International Corp.
Post Office Box 1907
Albany, New York 12201-1907 USA
Tel: 518 445 2258
Fax: 518 447 6310
E-Mail: linda_forget@albint.com



Linda F. Forget
Corporate Director of Benefits

**CERTIFIED MAIL**

March 31, 2004

Dora Dean Davis
5702 Red Barn Rd.
Montgomery, AL 36116



Dear Dora:

In accordance with the Albany International PensionPlus Plan provisions in effect on September 29, 2003, the date of your termination, you are entitled to a vested pension benefit.

You could receive a monthly benefit for life of $692.07 beginning September 1, 2016 (age 65) if single. If at that time you had been married for at least one year, your pension would be actuarially reduced, based on the age of your spouse when payments commence, and paid as a qualified 50% Joint and Survivor Benefit. The reduced amount will be paid to you as long as you live and if your spouse survives you, 50% of the reduced amount will continue to be paid for the remainder of your spouse's life.

You can elect to begin receiving your benefit as early as September 1, 2006 (age 55). In this case, your benefit will be actuarially reduced to reflect the fact that it will be paid over a longer period of time.

If you should die before your payments commence, and were married for at least one year, there will be a 50% Joint & Survivor Benefit payable to your surviving spouse. This benefit would be paid after September 1, 2006.

You must contact us in writing at least 60 days prior to the date you wish your benefits to commence.

If you have any questions relative to your pension benefit, please contact me.

Sincerely,

cc:

ALBANY/DAVIS
D 0196

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DORA DAVIS,                          )
                                     )
          Plaintiff,                 )
                                     )
vs.                                  ) CIVIL ACTION NO.:2:05-cv-1040-WKW
                                     )
ALBANY INTERNATIONAL,                )
JEFF JOHNSTON,                       )
                                     )
          Defendant.                 )

**DEFENDANT'S EXHIBIT**

Davis    15

## INITIAL DISCLOSURES

Pursuant to the provisions of Rule 26(a)(1), FRCivP, the Plaintiff provides to the defendant, the following:

### A. PERSONS WITH RELEVANT INFORMATION:

Aside from the **plaintiff**, the following is a list of each individual who is likely to have information that the plaintiff may use to support her claims. Except as otherwise stated, each of these individuals is/was employed by Albany International, 2000 Interstate Park Drive, Montgomery, AL 36109.

1.  Glenda Missildine
    15035 Hobbie Road
    Ramer, AL 36069

The plaintiff believes that Ms. Missildine may have personal knowledge about the procedures and policies of Albany International. Ms. Missildine is a former employee of Albany International.

2.  Jerelene Forest
    3062 Baldwinbrook Drive
    Montgomery, AL 36116

Ms. Forest is an employee with Albany International and has witnessed the actions of Jeff Johnston.

3.  Katherine Davis
    3942 Strathmore Drive
    Montgomery, AL 36116

Ms. Davis is an employee with Albany International and has witnessed the actions of Jeff Johnston.

4. Dorothy Collins
   802 Portland Drive
   Montgomery, AL 36111

Ms. Collins worked with the plaintiff at Albany International and witnessed the actions of Jeff Johnston.

5. Shederick Abner
   3936 Strathmore Drive
   Montgomery, AL 36116

Mr. Abner worked with the plaintiff at Albany International and knows the policies and procedures of Albany International. Mr. Abner has also witnessed the actions of Jeff Johnston.

6. Barbara Smith
   c/o Albany International
   2000 Interstate Park Drive
   Montgomery, AL 36109

Ms. Smith is a supervisor with Albany International and has information regarding the company's policies and procedures. Ms. Smith also observed the plaintiff while working with Albany International.

7. Nathaniel Jones
   c/o Albany International
   2000 Interstate Park Drive
   Montgomery, AL 36109

Mr. Jones is a supervisor with Albany International and has information regarding the company's policies and procedures. Mr. Jones also observed the plaintiff while working with Albany International.

Each of the following listed persons are physicians and/or medical personnel and can testify about the medical treatment and care that he or she has provided the plaintiff.

8. Donna Smith
   c/o Albany International
   2000 Interstate Park Drive
   Montgomery, AL 36109

9. Dr. Brian Sweet
   Dr. Steven Allen
   Family and Industrial Health
   4725 Mobile Highway
   Montgomery, AL 36108

10. Dr. Bradley Katz
    Center for Pain of Montgomery, P.C.
    Parker Women's Pavilion
    Baptist South
    2055 E. South Blvd.
    Montgomery, AL 36116

11. Dr. James Jakes
    Montgomery Rheumatology Associates
    1421 Narrow Lane Parkway
    Montgomery, AL 36111

12. Dr. Wade
    Birmingham, AL

13. Dr. Charles Hartzog
    4294 Lomac Street
    Montgomery, AL 36116

14. Montgomery Area Mental Health Authority
    101 Coliseum Boulevard
    P.O. Box 3223
    Montgomery, AL 36109

15. Dr. Darryl Hamilton
    Montgomery Cardiovascular Associates, P.C.
    2119 East South Blvd.
    Montgomery, AL 36116

15. Jackson Hospital
    1725 Pine Street
    Montgomery, AL 36106

16. Dr. John Hackman
    1722 Pine Street, Suite 1001
    Montgomery, AL 36106

17. Dr. Caudill Miller
    1722 Pine Street

Montgomery, AL 36106

18. Dr. Norman Garrison
    Family and Industrial Health
    4725 Mobile Highway
    Montgomery, AL 36108

19. Dr. Jep P. Dalton
    c/o Baptist Medical Center
    2105 East South Boulevard
    Montgomery, AL 36111

20. Dr. Michael Turner
    Southeastern Industrial &
    Family Medicine Associates, L.L.C.
    1600 Forest Avenue
    Montgomery, AL 36106

21. Dr. Jeffrey W. Mathis
    8190 Seaton Place
    Montgomery, AL 36116

22. Pri-Med
    34 Taylor Road N
    Montgomery, AL 36117

23. Pri-Med
    2815 E. Blvd.
    Montgomery, AL 36116

24. Baptist Medical Center South
    2105 E. South Blvd.
    Montgomery, AL 36116

25. Baptist Medical Center East
    400 Taylor Road
    Montgomery, AL 36117

B.                    DOCUMENTS

The plaintiff is in possession, custody, or control of the following documents and
will supplement any and all discoverable information upon receipt:

1.  Letter dated October 29, 2003 regarding return to work.

2. Inter-Office Memo dated October 29, 2003 regarding plant attendance policy.

3. Copies of plaintiff's time sheets.

4. Ergonomic Evaluation of the M3000 Machine.

The plaintiff will produce these records upon request from the defendants.

C. <u>DAMAGES:</u>  Specific computation of damages cannot be fully set forth at this time; however, the plaintiff will more specifically compute and more fully categorize damages upon engaging and completing discovery.

    1. Compensatory

        A.    Loss Wages/Back pay and Future earnings

        B.    Loss Benefits

        C.    Mental anguish/emotional distress: to be determined by jury

    2. Special damages:

        Attorney's fees (Statutory)

    3. Punitive Damages:    to be determined by the jury

D. <u>INSURANCE:</u>

None.

Respectfully,

/s/ Trina S. Williams
TRINA S. WILLIAMS (SAN 046)
VICKY U. TOLES (UND 014)
Attorneys for Plaintiff