**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DORA DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:05cv01040-WKW** |
| | ) | |
| **ALBANY INTERNATIONAL,** | ) | |
| **JEFF JOHNSTON** | ) | |
| **Defendants.** | ) | |

**ALBANY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dora Davis originally filed this action against Defendants Albany International Corp. ("Albany") and Jeff Johnston on October 28, 2005. She has been granted leave to amended her Complaint, and her proposed Amended Complaint asserts claims pursuant to 42 U.S.C. §1981, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615 (a)(1) and (2), the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq.*, and various Alabama common law causes of action against Jeff Johnston for which Plaintiff alleges Albany is responsible. Albany hereby moves for summary judgment in its favor on all of Plaintiff's claims on the following grounds:

1.      Davis admits that she was not discharged because of her race;

2.      All of her disparate treatment allegations under Section 1981 are barred by the statute of limitations;

3.      Davis cannot establish a prima facie case of discrimination under Section 1981;

4.    Davis admits that she was never denied FMLA leave when properly requested;

5.    Davis admits that she was never denied short term disability leave when she met the eligibility criteria;

6.    Davis admits that she never applied for long term disability leave through Albany's Plan;

7.    The record evidence demonstrates that Davis was not discharged to interfere with her receipt of pension benefits or because of her pursuit of FMLA leave;

8.    All of Plaintiff's state law claims against Albany are limited to conduct occurring within two years of the filing of her Complaint (i.e., conduct occurring on or after October 28, 2003);

9.    The record evidence demonstrates that Jeff Johnston did not commit an assault or battery upon Davis;

10.    The record evidence demonstrates that Jeff Johnston did not commit outrage upon Davis;[1]

11.    Plaintiff's state law tort claims are barred by Ala. Code § 25-5-53; and

12.    Even assuming the court determines that there is a material issue of fact concerning the alleged conduct of Jeff Johnston, the record evidence demonstrates that Albany is not responsible for his conduct under any of the negligence or respondeat superior theories asserted in the Complaint or Amended Complaint.

In support of its motion for summary judgment, Albany relies on the following evidence:

---

[1] Albany incorporates herein by reference Jeff Johnston's Motion for Summary Judgment, including his arguments related to Plaintiff's outrage and assault and battery claims.

1.      Plaintiff's May 12, 2006 deposition, with exhibits;

2.      Plaintiff's June 7, 2006 deposition, with exhibits;

3.      The Declarations of Jeff Johnston and Ted Bryant, with exhibits; and

4.      Excerpts from Plaintiff's October 19, 1999 deposition in Thomas Harris v. Albany International Corporation, Appleton Wire Division, CV-97-M-657-N, United States District Court for the Middle District of Alabama.

The Defendants' Notice of Filing Evidentiary Material In Support of Summary Judgment is being filed contemporaneously with this motion and is incorporated herein by reference.

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.

### STATEMENT OF FACTS

**A.     Davis' State Court Case**

On October 21, 2005, prior to filing this case, Davis filed suit against Albany in the Circuit Court of Montgomery County.  [Davis Dep. p. 12 l. 14 – p. 13 l. 4 and Ex. 1]. In addition to claims for workers' compensation benefits (Counts One and Three), Davis filed a claim pursuant to Ala. Code § 25-5-11.1 in which she alleged "that Defendant terminated Plaintiff's employment solely because plaintiff claimed rights under the . . . " Alabama workers' compensation statute.  [Davis Dep. Ex. 1, Count Two, ¶ 17].  Davis authorized the filing of the Complaint [Davis Dep. p. 13 l. 12-15], and verified the truth and accuracy of all allegations of her state court Complaint, including ¶ 17. [Davis Dep. Ex. 1, p. 4].[2] She reaffirmed the veracity of those allegation during her deposition in this

---

[2] Although the notarized verification states that it applies to Counts I and III, ¶20 of Count III incorporates all prior allegations of the Complaint, including ¶17.

case. [Davis Dep. p. 14 l. 4-13]. Davis' state court retaliatory discharge claim has been dismissed with prejudice. [Davis Dep. II Exs. 2-3].

## B.   <u>STD/LTD</u>

Davis enrolled in the Albany International Corp. Hourly Employees – Branch 208, Short Term Disability Coverage/Long Term Disability Coverage. [Davis Dep. Ex. 7]. As noted in the Summary Plan Description, this Plan is subject to ERISA, and all Plan benefits are provided by The Prudential Insurance Company of America. [*Id.* at p. 44]. "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." [*Id.* at p. 45]. Even though Prudential would have been responsible for determining Plaintiff's eligibility for benefits, and for paying all such benefits, Davis has not asserted any claims against Prudential in this action.

To be eligible for STD benefits, an employee must be "unable to perform the **material and substantial duties** of [their] **regular occupation** due to [their] **sickness** or **injury** . . ." through the elimination period. [*Id.* at p. 11]. The elimination period for STD claims is 3 days. [*Id.*; Davis Dep. p. 140 l. 14 – p. 141 l. 3]. An Albany employee is eligible for STD when Prudential determines that the employee is disabled. [Davis Dep. Ex. 7, p. 11]. Although Davis' Amended Complaint alleges that she was denied STD benefits [Amended Complaint ¶64], Davis admitted in her deposition that she was **never** denied STD when she applied and was out of work for at least 3 consecutive days. [Davis Dep. p. 140 l. 14 – p. 141 l. 3].

To be eligible for LTD, an Albany employee must be disabled as defined in the Plan and as determined by Prudential. [Davis Dep. Ex. 7, p. 21]. Although Plaintiff's Amended Complaint alleges that she was denied LTD benefits by the Company

[Amended Complaint ¶64], Davis admitted in her deposition that she **never** applied for LTD benefits through Albany's Plan. [Davis Dep. p. 139 l. 15-22]. Even assuming Davis had applied and been denied any such benefits, neither Albany or Jeff Johnston would have been responsible for making a determination as to Plaintiff's eligibility for STD or LTD benefits. [Davis Dep. Ex. 7; Bryant Dec. ¶ 6].

**C.    Allegedly Discriminatory Conduct of Jeff Johnston**

Jeff Johnston was employed by Albany from March 21, 1988 through April 7, 2004. [Bryant Dec. ¶ 8; Johnston Dec. ¶ 1]. During that time, Johnston held the following jobs in the Montgomery plant: Kraft Applications Engineer, 1988-1991; Finishing Supervisor, 1991-September 1992; Seaming Supervisor, October 1992-October 1993; Department Manager Seaming and Finishing, October 1993-March 1997; Department Manager Weaving, March 1997-June 2000; Production Manager, June 2000-June 2003; and Montgomery Plant Manager, June 2003-April 2004. [Johnston Dec. ¶s 2-9]. During the roughly 16 years they worked together at Albany, Jeff Johnston never hit Plaintiff [Davis Dep. p. 157 l. 2-4], never touched her inappropriately [Davis Dep. p. 157 l. 5-7], and never made her afraid that he was going to physically injure her. [Davis Dep. p. 157 l. 22 – p. 158 l. 8]. The only occasions when Johnston might have brushed against Plaintiff would have been leaning over a machine to check a fabric. [Davis Dep. p. 157 l. 8-21]. Davis does not claim that Jeff Johnston ever made any racial slurs.    [Davis Dep. p. 102 l. 1-4].

Davis claims Johnston treated her differently because of her race on four occasions. [Davis Dep. p. 127 l. 3-16]. One occasion arose out of a 3-day suspension Davis received for insubordination. [Davis Dep. p. 87 l. 15 – p. 88 l. 7]. On this occasion,

Davis was getting ready to leave work and her Supervisor, Tim Woodward, asked her to sign a work ticket indicating that there were no holes and no damage to a fabric. [Davis Dep. p. 89 l. 9 – p. 90 l. 8].  Davis refused to sign the ticket. [*Id*.]. At no point during this exchange with Woodward did Woodward make any reference to Davis' race, nor did he tell her that he was asking her to sign the ticket because of her race. [Davis Dep. p. 90 l. 9 – 16]. Thereafter, Davis met with Jeff Johnston in the Supervisor's office and she was suspended for 3 days for insubordination. [Davis Dep. p. 87 l. 23 – p. 88 l. 14]. Although Davis does not remember when this suspension occurred [Davis Dep. p. 88 l. 15-17],[3] she does recall that Johnston was the Seaming Department Manager at the time (i.e., between 10/93-3/97 [Johnston Dec. ¶ 5]).  [Davis Dep. p. 88 l. 18-21]. At no point during this meeting did Johnston make any reference to Davis' race [Davis Dep. p. 91 l. 1-4], he did not tell her she was being disciplined for insubordination because of her race [Davis Dep. p. 91 l. 5-8], and Davis did not ask Johnston if she was being disciplined because of her race.  [Davis Dep. p. 91 l. 9-12]. Although Davis says that she believed that she was being disciplined because of her race [Davis Dep. p. 91 l. 13-15], she made no effort to complain to Albany's Human Resources manager or to the Plant Manager about her suspension. [Davis Dep. p. 91 l. 16 – p. 92 l. 2].

Another incident identified by Davis involving Johnston occurred during a meeting. [Davis Dep. p. 93 l. 19 – p. 94 l. 9; p. 121 l. 21 – p. 127 l. 2]. According to Davis, a white Seamer named Dottie Brown was reading a pamphlet during the meeting and, after Davis asked Brown if she could see the pamphlet, Johnston told Davis "Dora,

---

[3] Albany notes that this ticket issue is referenced in an October 14, 2000 letter Davis wrote to the EEOC. [Davis Dep. II p. 320 l. 14 – p. 322 l. 7 and Ex. 17]. Although Davis' letter identifies Woodward's involvement in this issue, the letter makes no reference to any involvement by Jeff Johnston or to a suspension. [Davis Dep. II Ex. 17].

6

I will not have you looking at a magazine in my meeting." [Davis Dep. p. 123 l. 6-23].

Johnston did not tell Davis she could not read the magazine because of her race [Davis

Dep. p. 124 l. 22 – p. 125 l. 2], nor did Johnston make any racial references, slurs, or

jokes during this meeting. [Davis Dep. p. 125 l. 3-22].  Although Davis believed that she

was told not to read the pamphlet because of her race [Davis Dep. p. 125 l. 20-23], she

made no effort to complain to Albany's Human Resources manager or to the Plant

Manager about her suspension. [Davis Dep. p. 125 l. 13-19]. Although she testified in

this case that she does not know exactly when this occurred [Davis Dep. p. 121 l. 21-

23], Davis testified about this incident during her October 19, 1999 deposition in a prior

case. [Prior Davis Dep. p. 57 l. 23- p. 58 l. 11]. Based on Davis testimony in the prior

case, this event occurred 18 months to two years prior to her testimony on October 19,

1999. [Prior Davis Dep. p. 58 l. 12-14].

    Davis also claims that Johnston denied her the opportunity to participate in two

projects because of her race. The first project identified is her contention that Johnston

denied her the opportunity to continue serving as an Assistant Lead in the Seaming

Department. [Davis Dep. p. 95 l. 15-21]. Davis does not recall when she was an

Assistant Lead [Davis Dep. p. 95 l. 22 – p. 96 l. 1], nor how long she served in that role.

[Davis Dep. p. 96 l. 19-22]. According to Davis' testimony in this case, Tim Woodward

told Davis that Albany had cut out that position. [Davis Dep. p. 96 l. 23 – p. 97 l. 19]. In

her October 19, 1999 deposition, however, Davis testified that she voluntarily gave up

this job when Albany changed the job duties for the Leads and she admitted that there

was nothing discriminatory about how this occurred. [Prior Davis Dep. p. 49 l. 12 –p. 50

l. 3].

The only other project allegedly denied to Davis was a potential opportunity to become a trainer on first shift. [Davis Dep. p. 115 l. 15 – p. 116 l. 6]. Davis claims that Ken Funderburk[4] asked her one day if she would move to day shift to train if he asked George Cazalet. [Davis Dep. p. 116 l. 7- p. 117 l. 1]. Davis never heard anything else from Ken Funderburk and she never asked him about the position. [Davis Dep. p. 118 l. 15-22]. Davis does not accuse Funderburk of taking any action against her because of her race [Davis Dep. p. 118 l. 5-14], and she has no personal knowledge why she never received this position. Instead, Davis claims that another employee, Lomack Bean, told her that Jeff Johnston said would she get this job over his dead body. [Davis Dep. p. 118 l. 23 – p. 124 l. 10]. Davis would not have received a pay raise or additional seniority if she had received this position [Davis Dep. p. 120 l. 13-19]. Davis admits that no one was placed in this training job. [Davis Dep. p. 120 l. 20 – p. 121 l. 11]. Davis is not certain when these events occurred, but estimates that it "[i]t had to be . . . between 2001, 2003, something like that." [Davis Dep. p. 117 l. 11-19].

The last allegedly discriminatory event Davis identified involving Johnston occurred when Johnston was the Seaming Supervisor. [Davis Dep. p. 67 l. 9 – p. 69 l. 4]. Johnston was Seaming Supervisor from October 1992 to October 1993. [Johnston Dec. ¶ 4]. On this occasion, Davis was finishing her shift and getting ready to leave and she had words with two other Seamers, Shirley Thornton and Dottie Brown. [Davis Dep. p. 67 l. 9 – p. 68 l. 7; p. 69 l. 10 – p. 70 l. 22]. The following day, Johnston called Davis in the office and told her not to jump his employees. [Davis Dep. p. 68 l. 5-16; p. 71 l. 11-15]. Davis was not written up [Davis Dep. p. 71 l. 16-18], and she did not receive any

---

[4] Davis incorrectly refers to him as Ken Thunderbird.

formal discipline under Albany's plant rules. [Davis Dep. p. 71 l. 19-22]. Johnston made no reference to Davis' race, nor did he make any racially inappropriate remarks or jokes. [Davis Dep. p. 72 l. 4-9]. Davis called Plant manager George Cazalet about this incident, and Production Manager John Watson met with her and had Jeff Johnston apologize to her. [Davis Dep. p. 85 l. 2- 12].

**D.    Albany's EEO/Harassment Policies**

Davis admits that Albany had policies in place addressing discrimination and harassment.  [Davis Dep. p. 40 l. 20 – p. 41 l. 3].  Albany's Policy Regarding Unlawful Discrimination and Harassment prohibits race discrimination and harassment, and provides examples of the types of conduct which are against Company policy.  [Davis Dep. Ex. 2].  The policy directs employees to report any such concerns to "your Supervisor, your Department Head or the Human Resources Manager."  [*Id.*].  Davis received training on Albany's policies on August 12, 1998 [Davis Dep. Ex. 3] and again on January 10, 2001.  [Davis Dep. p. 43 l. 12 – p. 45 l. 23 and Ex. 4].  The training in 2001 was conducted by Dana Champagne, then Albany's Training and Development Coordinator.  [Bryant Dec. ¶ 2; Davis Dep. p. 44 l. 17 – p. 45 l. 7].  Every employee in Albany's Montgomery facility, including Jeff Johnston and Dora Davis, received training on Albany's discrimination and harassment policies in January 2001.  [Davis Dep. p. 46 l. 1-16 and Ex. 5].  Davis never made any effort to contact Dana Champagne to complain about any issues in the Montgomery plant.  [Davis Dep. p. 46 l. 17 – p. 47 l. 7].  Davis never complained to Ted Bryant or to George Cazalet about any racial slurs she claims to have heard in the plant.  [Davis Dep. p. 108 l. 22 – p. 109 l. 6; p. 114 l. 2-11].

**E.**    **FMLA Leave**

During her employment with Albany, Davis periodically was granted FMLA leave. [Davis Dep. p. 241 l. 15 – p. 246 l. 7 and Ex. 9]. Although Davis' Amended Complaint implies that she was denied FMLA leave (Count Two), Davis admits that she was never denied FMLA leave by Albany when she supported her leave request with medical certification that she needed to be off of work. [Davis Dep. p. 246 l. 19 – p. 247 l. 7]. Davis alleges that she was dischraged, in part, in violation of the FMLA because of Albany's handling of her worker's compensation claim. [Davis Dep. II P. 298 l. 11 – p. 299 l. 7; p. 333 l. 13 – p. 337 l. 21].

**F.**    **Events Leading To Davis' Resignation**

Davis was being treated for worker's compensation injuries during 2003. [Bryant Dec. ¶ 10 and Ex. 1]. Effective October 2, 2003, Albany placed Davis on inactive status based on her representations to the company that she was physically unable to work. [Johnston Dec. ¶s 10-11; Bryant Dec. ¶ 10 and Ex. 1]. Following a visit to her worker's compensation approved doctor on or about October 27, 2003, Albany was notified by Davis' authorized treating physician that she had been released to work. [Davis Dep. Ex. 11; Davis Dep. p. 159 l. 14 – p. 160 l. 23]. Following receipt of this notification concerning Davis' worker's compensation status, Davis met with Jeff Johnston, Ted Bryant, Bob Hampsey, and union steward Norma Heath. [Davis Dep. p. 158 l. 13-20]. This meeting occurred on October 29, 2003. [*Id.*]. At no point during this meeting did anyone make any reference to Davis' race [Davis Dep. p. 161 l. 21 – p. 162 l. 4], no one told any racial jokes nor made any racial slurs [Davis Dep. p. 162 l. 5-9], and no one mentioned her retirement benefits. [Davis Dep. p. 162 l. 10-12]. Although Davis

acknowledges that her treating doctors released her to return to work, it is her contention that none of her worker's compensation doctors was actually treating her injuries. [Davis Dep. p. 163 l. 18 – p. 166 l. 18]. No one in this meeting told Davis she was fired. [Davis Dep. p. 228 l. 1- p. 229 l. 1].

During the meeting on October 29, 2003, Davis received a letter from Ted Bryant. [Davis Dep. p. 252 l 5. – p. 253 l. 4 and Ex. 11]. No where in this letter does the Company tell Davis she is discharged. [Davis Dep. p. 253 l. 5-8 and Ex. 11]. In fact, it is clear from the letter that Albany was making every effort to save Davis' job. [Davis Dep. Ex. 11]. During the meeting, however, Davis informed the Company that she had applied for social security disability benefits. [Davis Dep. p. 255 l. 12 – 16]. Although Davis now denies having resigned during this meeting, she admits that no one at Albany told her she was discharged during this meeting  [Davis Dep. p. 228 l. 1- p. 229 l. 1], nor is there any reference to her alleged discharge in Ted Bryant's October 29, 2003 letter. [Davis Dep. Ex. 11].   To the contrary, all contemporaneous business records indicate she resigned.  [Davis Dep. Exs. 11-12; Bryant Dec. ¶ 11 and Ex. 2].

On or about March 31, 2004, Davis received a letter from Linda Forget [Davis Dep. p. 260 l. 1 – p. 262 l. 8 and Ex. 14]. This letter states that Davis is entitled to receive a vested pension benefit and provides an explanation of her benefits. [*Id.*]. Furthermore, to be eligible for retirement benefits, an employee must be at least 55 years old and have at least 10 years of service.  [Bryant Dec. ¶ 3].

Davis has been declared totally disabled by Social Security effective August 21, 2003. [Davis Dep. Ex. 8]. Davis admits that she has not applied for work nor been able to work anywhere since August 21, 2003. [Davis Dep. II p. 299 l. 8-21]. In fact,. Davis

11

admits that she has been unable to perform her job at Albany since that date. [Davis Dep. II p. 299 l. 22 – p. 300 l. 10]. All of Plaintiff's injuries for which she sought treatment are worker's compensation injuries. [Davis Dep. II p. 298 l. 11 – p. 299 l. 7].

## II.

## ARGUMENT

### A.    Plaintiff Cannot Establish a Violation of 42 U.S.C.A. §1981

Claim One of Davis' Amended Complaint asserts two claims pursuant to §1981: (1) that she was discharged because of her race [Amended Complaint ¶29]; and (2) that Jeff Johnston treated her differently than other employees because of her race. [Amended Complaint ¶30].[5] Because the record evidence refutes both claims, summary judgment is due to be granted on all of Plaintiff's §1981 claims.

#### 1.    *Davis admits she was not discharged because of her race*

To establish a discharge claim under §1981, Davis must prove that she was discharged by Albany, and that her "race was a substantial or motivating factor that prompted [Albany] to take that action." Eleventh Circuit Pattern Jury Instructions (Civil), 1.3.1. While there is a dispute about how Davis' employment with Albany ended (she now claims discharge, although the contemporaneous documents establish that she resigned – Davis Dep. Exs. 11 and 12, and Bryant Dec. ¶ 11 and Ex. 2], there is no dispute that she was not discharged because of her race.

Q. Do you believe you were discharged by Albany because you are black?

A. No.

---

[5] Davis acknowledges in her deposition that only those individuals named in the Complaint are being accused of race discrimination. [Davis Dep. p. 39 l. 7-12]. Accordingly, this claim is limited to allegedly discrminatory conduct by Jeff Johnston.

[Davis Dep. P. 143 l. 11-14]. Because Davis admits that her race was not the reason for her alleged discharge, the record evidence refutes her §1981 discharge claim and this claim is due to be dismissed. That is especially true where, as here, her previously filed state court lawsuit alleged that the **sole** reason for her discharge was her pursuit of worker's compensation benefits. [Davis Dep. Ex. 1].

### 2.    *Davis' disparate treatment claims are time barred*

Of the five actions by Johnston which Plaintiff claims were motivated by her race, all but one unquestionably occurred, if at all, well over four years before she filed her Complaint on October 28, 2005. [*See* § I. C, *supra*]. Accordingly, any claim based on these events is time barred. *See* 28 U.S.C. § 1658 (a); *Jones v. R.R. Donnelly & Sons Co.,* 541 U.S. 369, 378-79, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (finding that this enactment changed the limitations period for some claims under § 1981 to 4 years).

As for the one, potentially timely event, Davis cannot establish a *prima facie* case of race discrimination. To establish a *prima facie*, Davis must show that she: 1) was a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Maynard v. Bd. of Regents of the Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Ferrill v. The Parker Group, Inc.* 168 F.3d 468, 472 (11th Cir. 1999) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377-78, 105 L.Ed.2d 132 (1989) ("The test for intentional discrimination under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases.").

Here, the only arguably timely event in Davis' contention that Johnston prevented her from becoming a trainer on first shift. [*See* § I. C, *supra*]. Davis, however, has no personal knowledge that Johnston prevented her from getting this position. [Davis Dep. p. 118 l. 15 – p. 120 l. 12; p. 121 l. 12-15]. More importantly, the job was never posted, Davis did not apply, and no one ever filled the training job [Davis Dep. p. 120 l. 20 – p. 121 l. 11]. Finally, this position would not have changed Davis' pay or seniority. [Davis Dep. p. 120 l. 13-19] and, therefore, does not constitute an adverse employment action even if she was denied the position. In short, the record is devoid of any evidence that Albany had an available job for which Davis was qualified and applied, and was then rejected in favor of a white applicant. Summary judgment is due to be granted on this claim.

## B.    Plaintiff Cannot Establish A Violation Of The Family Medical Leave Act

The FMLA mandates that employers of fifty or more employees allow employees up to twelve weeks of leave within a twelve-month period if the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" rights under the FMLA. 29 U.S.C. §§ 2615(a)(1), 2617(a); *see Nev. Dep't of Human Res. V. Hibbs*, 538 U.S. 721, 724-25, 123 S.Ct. 1972, 1976, 155 L.Ed.2d 953 (2003). The Eleventh Circuit has "recognized that § 2615(a) creates two types of claims: 'interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because

14

[she] engaged in activity protected by the Act.'" *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199. 1206 (11th Cir. 2001).

Plaintiff in this matter has asserted both interference and retaliation claims against Albany. To establish her interference claim, she has to demonstrate "by a preponderance of the evidence that [she] was entitled to the benefit denied." *Strickland*, 239 F.3d at 1207. Because Davis admits that she was never denied FMLA leave when she was eligible for such leave [Davis Dep. p. 246 l. 19 – p. 247 l. 7], there is no factual basis in the record for an interference claim. Accordingly, this claim is due to be dismissed.

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show (1) she engaged in statutorily protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Hurlbert*, 439 F.3d at 1297 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Smith v. Bellsouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001)). Here, there is no dispute that Davis was granted FMLA leave when appropriate. [*See* Davis Dep. Ex. 9, Attendance Report]. However, Albany denies that Davis was subjected to an adverse employment action. To the contrary, the contemporaneous documents show that she resigned. More importantly, and fatal to this claim, is the record evidence refuting any causal connection between any period of FMLA leave and Davis' departure from the company.

First, as demonstrated by the Attendance Report attached as Exhibit 9 to Davis' deposition, she took approved FMLA leave in September, November, and December

2002, and again in January 2003. Even crediting Davis' allegation that she was discharged on either August 21 or October 29, 2003, the delay between her taking of approved leave and her "discharge" date severs any causal link between her FMLA leave and her "discharge."

Second, it is clear that the event precipitating the October 29 meeting with Davis was Albany's receipt of notice from her worker's compensation doctors that she had been released to return to work at full duty. [Davis Dep. Ex. 11]. No where in this letter is there any reference to any request for FMLA leave, nor any statement that she is being discharged for any reason.

Finally, and as noted previously, it is Davis' contention that the sole reason for her discharge was her pursuit of worker's compensation benefits. [Davis Dep. Ex. 1]. Accordingly, even Davis admits that there is no connection between any prior FMLA leave and her alleged discharge.

## C.    <u>Plaintiff Cannot Establish a Violation of ERISA</u>

Plaintiff's original Complaint asserted an ERISA claim related to her pension, and state law claims related to her STD and LTD benefits.  Albany moved to dismiss Claims Four-Six of the original Complaint because those claims are preempted by ERISA.  [Doc. No. 5].  Plaintiff acknowledged those claims were preempted [Doc. No. 11], and sought leave to amend her Complaint to restate Claims Four-Six as ERISA claims.  [Doc. No. 21]. Although the court has granted Davis' request, she has not yet filed her Amended Complaint.  Anticipating that she will do, this motion addresses Plaintiff's ERISA claims in her Amended Complaint.  However, because Davis did nothing more than remove the headings from Claims Four-Six which referred to state law theories, Albany reasserts its

16

motion to dismiss all state law claims relating to her STD and LTD allegations to the extent any such claims remain in Plaintiff's Amended Complaint.

Focusing on the Amended Complaint, Davis asserts the following claims pursuant to ERISA: (1) that Davis was discharged to prevent her from receiving full retirement benefits [Amended Complaint ¶s 56-57]; and (2) that Albany has "failed and refused to pay the disability benefits as provided for in the plan for STD and LTD, the benefits presently being past due and unpaid." [Amended Complaint ¶ 64]. Because the facts do not support Plaintiff's ERISA claims, summary judgment is due to be granted and these claims are due to be dismissed.

### 1. *Davis admits that Albany did not deny her STD or LTD benefits*

ERISA allows a plan participant to bring an action to recover benefits due under the terms of the plan. *See* 29 U.S.C. §1132(a)(1)(B) and (a)(3). "[A] denial of benefits challenged under [ERISA] is to be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed. 2d 80, 95 (1989) (quoted in *Anderson v. Blue Cross/Blue Shield of Alabama*, 907 F.2d 1072, 1075 (11th Cir. 1990); *Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1549-50 (11th Cir. 1994); *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556, 1559 (11th Cir. 1990), *cert. denied*, 498 U.S. 1040 (1991); *Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1138-39 (11th Cir. 1989). "Under the arbitrary and capricious standard of review, [the Court] is limited to deciding whether the Fund's interpretation of the plan was made rationally and in good faith." *Cagle v. Bruner*, 112 F.3d 1510, 1518 (11th Cir. 1997).

17

Normally, this is the analysis the Court would employ to determine whether a plaintiff can sustain an ERISA claim. In such actions, however, the party responsible for making benefit determinations is typically a party to the lawsuit. In this case, however, Davis has not filed suit against Prudential who, pursuant to the Plan documents, is responsible both for deciding eligibility and for paying benefits. Because Albany has no responsibility for making benefit determinations or for paying benefits if eligible, Davis' claims against Albany (and Jeff Johnston if she intended to include him in this claim) are due to be dismissed. That is especially true in this case because Ms. Davis admits that she was never denied STD benefits under the plan when she was eligible.

> Q.  At any point, while you worked for Albany, did you ever submit an application for disability insurance benefits?
> A.  Yes…
> Q.  …All right.  Did [Albany] ever refuse to give you any paperwork, if you asked for it, for disability insurance?
> A.  No…
> Q.  Okay. Have you ever been denied short-term disability benefits when you applied for them while you were at Albany?
> A.  The only time you didn't receive benefits is when you didn't have three or more days of short-term - - I mean short-term disability.
> Q.  All right.  Is there any occasion where you were out for more than three days that you applied for but were denied short-term disability payments?
> A.  No.

[Davis Dep. p. 127 l. 17-21; p. 129 l. 4-7; p. 140 l. 14 — p. 141 l. 3].

Likewise, she admits that she never applied for LTD benefits while she was employed with Albany, so no entity or person was ever asked to make a decision concerning eligibility for LTD benefits under the Plan.

> Q.  Did you ever submit an application to Prudential for long-term disability coverage through your Albany plan?
> A.   No.
> Q.  So you never applied for LTD benefits?
> A.  No.

B CAP 713655 v1
1037648-000005 06/21/2006

[Davis Dep. p. 139 l. 15-22].

It is clear from Plaintiff's own admissions that Albany committed no ERISA violation based on a failure and/or refusal to pay disability benefits.  As such, there is no genuine issue of material fact to be decided and summary judgment is appropriate for Plaintiff's claims.

### 2.    *Albany did not interfere with Plaintiff's receipt of pension benefits*

ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan… or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The Eleventh Circuit has articulated the test for demonstrating a violation of this section.  In *Clark v. Coats & Clark*, 990 F.2d 1217, 1222-23 (11th Cir. 1992), the Court held that a plaintiff may show a violation through direct evidence or by satisfying the scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and restated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 253-54, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981).  Direct evidence should be so blatant that there can be no other intent but to discriminate.  *Carter v. City of Miami*, 870 F.2d 578, 581-82.  In essence, in order to satisfy the direct evidence threshold, the plaintiff would have to offer documents or remarks to the extent that Albany indicated plaintiff was being discharged because Albany wanted to reduce the amount of pension benefits plaintiff would have

B CAP 713655 v1
1037648-000005 06/21/2006

been entitled to at the age of 55.[6]  Plaintiff has offered no such evidence.  Therefore, the correct analysis falls under the *McDonnell Douglas* scheme.

"In the context of a § 510 claim alleging unlawful discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) [she] is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination.  *Clark*, 990 F.2d at 1223 (citing *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 347 (3d Cir. 1990); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114-15 (2d Cir. 1988))).  The *Clark* court further agreed with the Third and Fifth Circuits that a plaintiff cannot satisfy a *prima facie* showing by merely showing, as a result of the termination, she was deprived of the opportunity to accrue more benefits.  *Id.* (citing *Turner*, 901 F.2d at 348; *Clark v. Resistoflex Co.*, 854 F.2d 762, 771 (5th Cir. 1988)); see also *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 546 (11th Cir. 1993)("The ultimate inquiry in a § 510 case is whether [Albany] had the specific intent to interfere with the [plaintiff]'s ERISA rights… A plaintiff must show more than an incidental loss of benefits as a result of a discharge…"). Instead, Davis must present evidence that Albany's decision was directed at her ERISA pension rights in particular.  *See Clark*, 990 F.2d at 1224 (citing *Unida v. Levi Strauss & Co.,* 986 F.2d 970, 979 (5th Cir. 1993)).  Although Plaintiff was a participant in Albany's Plan which is covered by ERISA [Amended Complaint ¶ 54], she fails to establish the remaining prongs of her *prima facie* case.

First, Plaintiff admits that she has been unable to perform her job functions at Albany, or to work anywhere, since August of 2003. [Davis Dep. II p. 229 l. 8 – p. 300 l. 10 and Ex. 8]. Although this allegation by Plaintiff seems to be contradicted by the findings of

---

[6] Albany denies that Plaintiff was discharged, but rather voluntarily terminated her employment with the company.

her treating doctors during her employment with Albany, Plaintiff's assertion is nonetheless supported by a finding of the Social Security Administration that she is and has been totally disabled since August 21, 2003. [Davis Dep. Ex. 8]. Therefore, Davis was not qualified for her job at Albany at the time of her discharge and her *prima facie* case fails.

More importantly, there is no evidence inferring, implying, or remotely hinting that Davis' departure from the Company had anything at all to do with her retirement benefits. To the contrary, the Company's October 29 letter to Davis indicates that Albany was trying to help her preserve her employment with the Company, and that letter makes no reference to her retirement benefits. [Davis Dep. Ex. 8]. Likewise, Linda Forget's March 31, 2004 letter explains to Davis her vested pension rights under Albany's Plan. [Davis Dep. Ex. 14]. These documents demonstrate that Albany took no steps to interfere Davis' pension benefits.

Even if the court concludes that the October 29 and March 31 letters to Davis do not conclusively refute this claim, two other factors sever any causal link. Given that Davis was required to be employed with Albany at the time she turned 55 (i.e., on August 25, 2006) to be eligible for retirement benefits [Bryant Dec. ¶ 3], the fact that she was "discharged" three years before she was eligible for retirement benefits eliminates any inference of a causal link between the two events. *See* Humes v. McDonnell Douglas Corp.*, 922 F. Supp. 229, 234 (E.D. Mo. 1996), quoting *Newell v. McDonnell Douglas Corp.*, 1994 WL 880432, at *11 (E.D. Mo. August 31, 1994) ("'Any possible inference of intentional interference is eliminated by the several years time-span between the date of lay-off and the date of vesting of any additional benefits.'"). Likewise, Davis' state court case alleging that the **sole** reason she was discharged from Albany was in retaliation for

21

her pursuit of worker's compensation benefits estops her from arguing in this action that there is a causal link between her pension benefits and her alleged discharge. [Davis Depo. p. 12 l. 18-p. 13 l. 3; p. 14 l. 4-13].  Essentially, Plaintiff has offered this Court nothing more than her contention that her separation from employment with Albany resulted in a reduction of pension benefits under the Plan.  The Eleventh Circuit has already ruled that this is simply not enough to satisfy her *prima facie* case.  *See Clark*, 990 F.2d at 1224.

**D.    Plaintiff's State Law Claims Are Due To Be Dismissed**

**1.    All claims pre-dating October 28, 2003 are time barred**

Davis' Amended Complaint asserts claims against Jeff Johnston for intentional infliction of emotional distress (Claim Seven) and assault and battery (Claim Nine), and seeks to hold Albany responsible for Johnston's conduct through negligence (Claims Four-Six) and traditional respondeat superior principals (Claim Eight).  Pursuant to Ala. Code § 6-2-38, the statute of limitations for all of these claims against Albany is two years.  Thus, Davis' tort claims against Albany may be predicted solely on the basis of conduct occurring on October 28 and 29, 2003.  Put another way, Davis' meeting with Johnston, Bryant, Hampsey, and Heath on October 29, 2003, is the only interaction between Davis and Albany within the statute of limitation, and nothing occurred in this meeting sufficient to impose liability against Albany under any tort theory in the Complaint or Amended Complaint.

**2.    Plaintiff's claims are due to be dismissed because Johnston committed no tort**

As set forth in Jeff Johnston's Motion for Summary Judgment, the record evidence refutes Davis' assault and battery and intentional infliction claims.  Because

B CAP 713655 v1
1037648-000005 06/21/2006

Plaintiff cannot establish the underlying tort claims against Johnston, there is no basis for inputing liability to Albany.  *See Stevenson v. Precision Std., Inc.*, 762 So. 2d 820, 824-25 (Ala. 1999) (noting that action for negligent supervision or training is "predicated on the underlying tortious conduct of an employee" and, where plaintiff cannot prove such conduct, employer cannot be liable); *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993) (same); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) ("For the employer to be liable under [respondeat superior], the employee must first be liable for a tort.").  Because Davis' testimony eliminates any factual basis for her tort claims against Johnston, all of her state law claims are due to be dismissed.

### 3.    Plaintiff's tort claims are barred by Ala. Code § 25-5-53

It is clear from Davis' testimony that all of her alleged injuries arise out of and relate to her treatment concerning workplace injuries.  Davis has a separate lawsuit raising these issues.  [Davis Dep. Ex. 1].  Furthermore, her exclusive remedy against Albany for these acts is Alabama's worker's compensation statute.  *See* Ala. Code § 25-5-53.

### III.

### CONCLUSION

In light of the foregoing, Defendant Albany International Corp. respectfully requests that this court enter summary judgment in its favor on all of Plaintiff's claims, and afford Defendants an opportunity to seek fees and costs prior ot the entry of a final judgment in this action.

Respectfully submitted,

s/ Charles A. Powell IV
Charles A. Powell IV
Attorney for Defendant

**OF COUNSEL:**
**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ**
420 North 20th Street, Suite 1600
Birmingham, Alabama  35203-5202
(205) 244-3822 telephone
(205) 488-3822 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on the following counsel of record via U.S. mail and electronic mail, on this 21st day of June, 2006.

Trina S. Williams
Vicky U. Toles
Toles & Williams, LLP
1015 South McDonough Street
Montgomery, Alabama 36104

Jennifer F. Swain
Lynlee W. Palmer
Johnston Barton Proctor & Powell LLP
2900 AmSouth/Harbert Plaza
1901 6th Avenue North
Birmingham, Alabama  35203-2618

s/ Charles A. Powell IV
OF COUNSEL

B CAP 713655 v1
1037648-000005 06/21/2006