IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DORA DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE No. 2:05-cv-1040-WKW |
| ) | |
| ALBANY INTERNATIONAL, ) | |
| JEFF JOHNSTON ) | |
| Defendants. ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on September 22, 2006, wherein the following proceedings were held and actions taken:

**I.    PARTIES AND TRIAL COUNSEL:**

| **PARTIES** | **TRIAL COUNSEL** |
|---|---|
| Dora Davis, Plaintiff | Trina S. Williams |
| | Vicky U. Toles |
| | Toles & Williams, LLP |
| | 1015 South McDonough Street |
| | Montgomery, Alabama 36104 |
| | |
| Albany International Corp., Defendant | Charles A. Powell IV |
| | Baker, Donelson, Bearman, |
| | Caldwell & Berkowitz, PC |
| | 420 North 20th Street, Suite 1600 |
| | Birmingham, Alabama  35203-5202 |
| | |
| Jeff Johnston, Defendant | Lynlee W. Palmer |
| | John W. Sheffield |
| | Johnston Barton Proctor & Powell LLP |
| | 2900 AmSouth/Harbert Plaza |
| | 1901 6th Avenue North |
| | Birmingham, Alabama  35203-2618 |

**COUNSEL APPEARING AT PRETRIAL HEARING:**

Plaintiffs: Trina S. Williams, Vicky U. Toles, Dora Davis

Defendants: Charles A. Powell IV, Albany International Corp.
Lynlee Wells Palmer, Jeff Johnston

## II. JURISDICTION AND VENUE.

Subject matter jurisdiction exists under 28 U.S.C. § 1331 for Davis' claims under 42 U.S.C. § 1981, 29 U.S.C. § 2615(a), and 29 U.S.C. § 1132. Supplemental jurisdiction over Davis' state law claim exists pursuant to 28 U.S.C. § 1367. Personal Jurisdiction and venue are not contested.

## III. PLEADINGS.

The following pleadings have been allowed:

    a. Original Complaint (Doc. No. 1)

    b. Albany's Answer to original Complaint (Doc. No. 6);

    c. Amended Complaint (Doc. No. 33);

    d. Albany's Response to Amended Complaint (Doc. No. 34); and

    e. Jeff Johnston's Answer to Amended Complaint (Doc. No. 40).

## IV. CONTENTIONS OF THE PARTIES.

**(a) Dora Davis:**

Dora Davis contends that Albany International and Jeffrey Johnston violated her rights under 42 U.S.C. § 1981, the Family Medical Leave Act, ERISA, Negligent Hiring, Supervision

and Training, Negligent Retention, Negligence, Intentional Infliction of Emotional Distress, and Respondeat Superior.

Davis contends that she was treated differently from others similarly situated because she was denied workers compensation benefits for an injury sustained while employed with Albany International. Davis contends that Albany was aware that the machines were causing injuries because Albany had conducted a study of the machines. Davis contends that other employees injured on the job were allowed to retire early and/or were granted disability benefits and/or workers compensation. Davis was terminated from Albany International on October 29, 2003, because she could not perform her job duties.

Davis applied for benefits under Social Security Administration which she was granted based on her disabilities although the workers compensation doctors stated that Davis did not have any injuries and could return to work.

The company through their policies and procedures effectively denied Davis any assistance through workers compensation, FMLA, short term disability ("STD") and long term disability ("LTD"). For example, Davis could not receive workers compensation benefits because the workers compensation doctors stated that she did not have any injuries and released her back to work. Davis could not apply for STD and LTD because the disability had to be non-work related. Davis did not specifically request relief under the FMLA, but continued to ask the personnel manager for assistance, to no avail. Therefore, Albany along with Jeff Johnston violated Davis' rights by the denial of workers compensation, FMLA, STD and LTD.

Davis contends that she was continuously harassed by Jeff Johnston until she was terminated on October 29, 2003. Jeff Johnston held a supervisory position with the company and acted on behalf of the company.

**(a)     Albany:**

Albany denies all of Davis' allegations, including her contention that she was discharged. To the contrary, Albany contends that Davis voluntarily resigned from the Company after she had been released to full duty by her approved, worker's compensation doctors.

Albany expressly denies taking any action against Davis because of her race. In fact, Davis admits that she was not discharged because of her race and, therefore, her Section 1981 discharge claim is without merit. Furthermore, Albany asserts that all of Davis' Section 1981 disparate treatment claims, except her alleged discharge, are barred by the applicable statute of limitations. Davis also cannot demonstrate that she was treated differently than any similarly situated co-worker because of her race or that any legitimate non-discriminatory action taken toward her was a pretext for race discrimination. Finally, Albany asserts that it would have taken the same actions toward Davis regardless of her race.

Albany further denies that Davis was ever denied FMLA leave when she properly requested such leave and supported her request with a medical certification. Davis admits this fact. Not only was Davis never denied FMLA leave when appropriate, Davis voluntarily resigned from Albany and, therefore, was not discharged for the purpose of interfering with her rights under the FMLA. More importantly, Davis was never eligible for reinstatement under the FMLA and, therefore, is not entitled to any relief from Albany even assuming she were discharged.

Albany denies taking any action against Davis for the purpose of interfering with her rights under the Company's STD plan, LTD plan, or pension plan. For example, Davis admits that she was never denied STD leave when she met the eligibility criteria and requested such

leave. Second, she never applied for LTD leave through Albany's Plan. Third, Davis has not filed suit against the entity who provides the insurance benefits under Albany's disability plans. Fourth, Davis is eligible for her vested pension benefits. Finally, the evidence refutes any connection between retirement or disability benefits for which Davis might have been eligible and her resignation from the Company.

Albany denies that Davis was subjected to outrage/intentional infliction of emotional distress. Even assuming she were, Albany asserts that any such conduct by Jeff Johnston was outside the course and scope of his employment, and the Company denies that it is responsible for those acts under any theory asserted in the Amended Complaint. That is especially true where, as here, the statute of limitations limits Davis' claims solely to the alleged events of October 29, 2003.

To the extent that Davis attempts to raise allegations relating to her workers' compensation claim, this Court lacks jurisdiction over those matters.

Albany incorporates herein by reference the Defenses asserted in its Amended Answer (Doc. No. 7). For example, as noted above, most of Davis' state law and Section 1981 claims are barred by the applicable statute of limitations. Similarly, Davis' assertion in her state court complaint that the sole reason for her discharge was her pursuit of worker's compensation benefits precludes all of her discharge claims in this action. Her admission that she has not looked for any work since leaving the Company, and in fact has been unable to work at all since August 21, 2003, demonstrates that she has not mitigated her damages and, therefore, is not entitled to back pay, reinstatement, or lost benefits. In fact, her inability to work beginning August 21, 2003, rendered her unqualified for her job at Albany.

Finally, Albany is entitled to recover its attorneys' fees and costs incurred in defending Davis' claims.

(b)     **Johnston**:

Johnston denies the plaintiff's allegations against him. Davis asserts claims against Johnston for race discrimination under 42 U.S.C. § 1981, violation of the Family and Medical Leave Act ("FMLA"), discrimination under the Employee Retirement Income Security Act ("ERISA"), intentional infliction of emotional distress, and assault and battery. In her response brief, however, Davis admitted that she "can not [sic] substantiate her claim and voluntarily dismisses the claim for assault and battery." (Plaintiff's Reponse at 15).

Johnston denies that he took any actions against Davis on the basis of her race. Davis admits that she does not believe that her termination was on the basis of her race. (Davis 143, lines 11-14). Her other allegations of race discrimination (a) lack an identifiable comparator, (b) do not constitute an adverse employment action, and (c) are time-barred. First, although Davis claims that she was treated differently than others, she fails to identify a comparator outside of her protected class who was treated more favorably than she. Second, according to Davis' deposition testimony, at least four of her five identified instances of possible race discrimination occurred between 1992 and 1999, well outside of the statute of limitations under § 1981. With respect to the fifth instance, Davis could not definitely state whether it occurred before or after her injury in 2001 and, thus, may also be time-barred. To the extent that it is not time-barred, it nevertheless does not constitute an adverse employment action sufficient to state a *prima facie* case.

Johnston further denies that he took any actions against Davis to interfere with her alleged retirement benefits. Davis' attorneys have confirmed that the only ERISA claim she is pursuing against Johnston is his alleged interference with her receipt of retirement benefits. (Johnston's Reply Brief, *Exhibit A*). Davis does not think that she ever had any conversation with Johnston about her retirement benefits and, thus, cannot establish any causal link between her termination and her alleged interference with retirement benefits. To the extent that she claims that Johnston interfered with her receipt of any other benefits (in direct contrast to her attorneys' representation), Davis was not denied short-term disability benefits, she never applied for long-term disability benefits, and a third party, Prudential, was responsible for making determinations as to Davis' eligibility for those benefits. Further, Davis applied for disability benefits and was deemed disabled retroactively to August 21, 2003, more than two months prior to her alleged termination from Albany. By her own admission, therefore, she was unable to work at the time of her termination and was not qualified for her job at Albany.

Additionally, Johnston denies that he is an "employer" under the FMLA and, thus, that he is liable for any alleged violation thereof. Davis admits that she was never denied FMLA leave when her request was supported by medical certification, as required by Albany policy, and she has not and cannot identify any other Albany employee who was permitted to take FMLA leave without a medical certification indicating that he/she needed to be off work. Further, Davis testified that two Albany employees, Ted Bryant and Lynda Jones, were responsible for FMLA leave requests. She did not know whether Johnston participated in the FMLA process at all. Because there is no evidence that Johnston participated in the alleged decision to deny FMLA leave, Johnston is not an "employer" under the FMLA and is not subject to liability. To the extent that Davis attempts to assert an FMLA retaliation claim, she has no

evidence of a casual link between her alleged request for FMLA leave and her alleged termination.

Johnston also denies Davis' allegations of intentional infliction of emotional distress, which she has improperly deemed "harassment." Davis' alleged termination took place on October 29, 2003, and the instant action was filed on October 28, 2005. For any allegations of intentional infliction of emotional distress to be actionable, they must have occurred on either October 28 or 29, 2003. Davis' allegations with respect to those days are limited to (1) Johnston allegedly yelling at her, but not using profanity; and (2) Johnston allegedly threatening to call the police, but not doing so. These allegations do not rise to the level of severity necessary under Alabama law.

Finally, to the extent that Davis attempts to raise allegations relating to her workers' compensation claim, this Court lacks jurisdiction over those matters.

Johnston incorporates herein by reference his defenses as set forth in his Answer to the Amended Complaint.

### V. STIPULATIONS BY AND BETWEEN PARTIES

1. Davis was never denied FMLA leave when properly requested.
2. Davis was never denied short term disability leave when she met the eligibility criteria.
3. Davis never applied for long term disability leave through Albany's Plan.
4. Davis was never denied long term disability leave through Albany's Plan.
5. Neither Albany nor Jeff Johnston would have been responsible for deciding if Davis was eligible for long term disability benefits if she had applied. benefits

6. All of Plaintiff's state law claims are limited to conduct occurring within two years of the filing of her Complaint (i.e., conduct occurring on or after October 28, 2003).

7. Davis has been unable to perform any work since August 21, 2003.

8. Albany has policies in place prohibiting workplace discrimination and harassment.

9. Davis and Johnston were trained concerning Albany's policies, including how and to whom to report any such concerns.

10. Davis is eligible to receive her vested pension benefit in accordance with Albany's plan.

11. Davis has been completely unable to work, including her job at Albany, since August 21, 2003.

12. Davis has not applied for work since August 21, 2003.

13. Jeff Johnston is the only employee of Albany whom Davis claims in this case took any unlawful action against her.

14. There were no racial slurs or comments made during Davis' October 29, 2003 meeting with Ted Bryant, Jeff Johnston, Bob Hampsey, and Norma Heath.

15. Johnston was not involved in FMLA determinations.

16. Davis did not discuss her retirement benefits with Johnston.

## VI. ORDER OF THE COURT

It is hereby ORDERED that:

a. The jury selection for this case is set for November 6, 2006, at 10:00 a.m. at the United States Courthouse, in Courtroom 2-E, in Montgomery, Alabama.

b.  The trial in this case will commence on November 6, 2006, and will take from two to three days.

c.  A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term.

d.  The parties shall file any motions in limine, fully briefed, on or before October 23, 2006.

e.  The parties shall file any requested voir dire questions, motions in limine fully briefed, and any proposed jury instructions and verdict forms with legal citations thereon, on or before October 23, 2006.

f.  The jury will consist of eight jurors. Each party is entitled to four strikes. There will be no back striking.

g.  The parties are not required to file trial briefs, but if they choose to do so, the briefs shall be filed on or before October 30 2006.

h.  If either party intends to call a witness who is currently incarcerated, that party must notify the Court at least 10 days before trial.

i.  Each party shall submit at the time of trial, for use by the court (the judge, law clerk, and courtroom deputy), three copies of the witness list, exhibit list, and notebook of pre-marked exhibits.

j.  Each party shall submit a sufficient number of copies of exhibits for each of the jurors and opposing counsel.

k.  The parties shall review and comply with the Middle District of Alabama's Order on the E-Government Act.

l.  All deadlines not otherwise affected by this order will remain as set forth in the Uniform Scheduling Order (Doc. #14 ) entered by the Court on January 23, 2006.

m. The parties have indicated that there are no other disputes at this time. All understandings, agreements, deadlines, and stipulations contained in this Order shall be binding on all parties unless modified by the Court.

DONE this the 26th day of September, 2006.

                /s/  W. Keith Watkins
                UNITED STATES DISTRICT JUDGE