IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DORA DAVIS,                                    )
                                               )
      Plaintiff,                           )
                                               )
v.                                             )          CASE NO. 2:05-cv-1040-WKW
                                               )                    (WO)
ALBANY INTERNATIONAL,                          )
JEFF JOHNSTON,                                 )
                                               )
      Defendants.                          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dora Davis ("Davis") commenced this discriminatory discharge action on October 28, 2005, against her former employer, Albany International Corporation d/b/a Appleton Wire ("Albany"), and her former supervisor, Jeff Johnston ("Johnston"). In this lawsuit, Davis alleges that Albany and Johnston violated her rights under 42 U.S.C. § 1981 ("Section 1981"), the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. ("FMLA"), and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"). In addition, Davis alleges state law claims of negligent retention, negligence, intentional infliction of emotional distress, assault and battery, respondeat superior, and negligent hiring, supervision and training.

This cause is before the court on Albany's motion for summary judgment (Doc. # 27) and Johnston's motion for summary judgment (Doc. # 28). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motions for summary judgment are due to be GRANTED in relation to Plaintiff's assault and battery claims, and claims under 42 U.S.C. § 1981, the FMLA, and ERISA. Further, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus concludes that these claims are due to be DISMISSED WITHOUT PREJUDICE.

## I. FACTS AND PROCEDURAL HISTORY

The court has considered all deposition transcripts, affidavits and documents submitted in support of and in opposition to the motions for summary judgment.[1]  Although the parties' versions of the facts differ, the summary judgment posture of this case requires this court to consider the submissions of the parties in the light most favorable to the plaintiff as the non-moving party.  The evidence presented by the parties, viewed in the light most favorable to the plaintiff, establishes the following facts.

Davis was employed by Albany from March 1979 to October 2003.  Davis was a member of the Teamsters union and participated in Albany's retirement plan, short-term disability plan and long-term disability plan.  During her tenure with Albany, Davis worked a variety of hourly positions, including warper in the weaving department, seamer, and NAP operator.  While working in these various positions, Davis suffered multiple work-related injuries.  For example, in July 2001, Davis suffered a rotator cuff injury and, in February 2002, she suffered injuries to her neck.  Davis received treatment from numerous doctors for her injuries through the worker's compensation insurance program.  Following treatment for each work-related injury, Davis was released from the physicians to return to work at Albany.

Between August 21, 2003, and October 29, 2003, Davis complained of excruciating pain and asserted that she was unable to perform any of her job duties.  According to Davis, she suffered neck pain, wrist pain, back pain, knee pain, and shoulder pain; and "was constantly having problems"

---

[1] Notably, the court did not consider the unsworn declaration submitted by Defendant Johnston (Doc. # 26, Ex. 3) as it is not subscribed by Johnston as being "true under penalty of perjury" as required by 28 U.S.C. § 1746.

trying to sit at her machine, standing and walking.[2]   During this time, Davis worked only periodically.[3]

On August 21, 2003, Albany Human Resources Manager Ted Bryant ("Bryant") called Davis at her residence and suggested that she not return to work until after a scheduled doctor's appointment with one of her approved worker's compensation physicians.  Davis had just received a written warning, pursuant to Albany's attendance policy, for an attendance occurrence on August 20, 2003.  Thereafter, Davis accumulated three more attendance occurrences due to her absence from work on September 29, 2003, September 30, 2003, and October 1, 2003.[4]

On October 29, 2003, Davis met with Bryant, Johnston,[5] Norma Heath ("Heath"), Teamsters Union Steward, and Bob Hampsey ("Hampsey"), Albany's Department Manager of Seaming, Finishing and Shipping.  During the meeting, Davis was informed that, following a medical appointment on October 27, 2003, one of her worker's compensation physicians, Dr. Jeff Wade, had released her to return to work.  Bryant gave Davis a memorandum regarding her attendance wherein he explained Davis' status under Albany's attendance policy.[6]  Bryant reviewed the memorandum with Davis and asked her whether she had any questions.  Davis did not ask any questions, but asserted that she was constantly in excruciating pain.  Davis complained that the worker's compensation physicians were not helping her with her pain.

---

[2] (Doc. # 26, Ex. 1, Pl.'s Dep. 154.)

[3] (*Id*. at 151.)

[4] It is unclear from the record whether these three attendance occurrences were related to the scheduled doctor's appointment discussed in the August 21, 2003, telephone call.

[5] Johnston began his employment with Albany in 1988 and, at all times relevant to this action, was Davis' immediate supervisor.

[6] (Doc. # 26, Ex. 1, Pl.'s Dep., Ex. 10.)

In the meeting, Bryant also provided Davis with a letter noting the "conflicting conclusions" between Davis and her treating physicians regarding her medical condition.[7]  The letter provided, in relevant part:

> Notwithstanding your medical evaluations, you have expressed to us on several occasions your belief that you are unable to perform the essential elements of your job without severe pain and numbness in numerous parts of your body.  Recently, you documented severe pain complaints in multiple body parts on your daily time sheets after working all or a portion of your shift.  In addition, you have left work or failed to report to work without medical authorization on several occasions because of severe pain complaints.

> *   *   *

> [E]ach time you leave work or fail to report to work without medical authorization, you are in violation of the plant's attendance policy. Continued unauthorized absences beyond what is allowed under the attendance policy will result in termination of your employment.

> In order to protect you from violation of the attendance policy and to protect you from injury or damage to your health, we have used an "inactive" work status to allow you to be out of work without medical authorization pending resolution of the disagreement between you and your physicians regarding your medical condition.  Although the time out of work while you have been in an inactive status has been without pay, it is the only way we knew to help you avoid violation of the attendance policy.

(Doc. # 26, Ex. 1, Pl.'s Dep., Ex. 11.)  The letter informed Davis that she had the choice to return to work but, if she returned, she would be expected to work her regular work schedule and comply with the attendance policy.[8]  The letter further provided:

> If you feel that you are not capable of returning to work without causing harm to your health, we will allow you to remain in an

---

[7]  (Doc. # 26, Ex. 1, Pl.'s Dep., Ex. 11.)

[8]  (*Id.*)

"inactive" status for a reasonable time in the hope that you will be
able to resolve your medical problems and return to work.

(*Id*.)

Davis then notified Bryant, Hampsey, Heath, and Johnston, that she had applied for Social
Security disability benefits[9] and would not pursue long-term disability benefits from Albany. Bryant
responded by informing Davis that the "inactive" status was no longer available and that she was to
return to work for her scheduled shift on the following day, October 30, 2003. Davis stated that if
she returned to work, she would be in constant pain. Johnston informed Davis that she could not
return to work if she was going to suffer pain and advised her to find a doctor that supported her
medical complaints.[10] As a result, on October 30, 2003, Davis' employment with Albany was
terminated.[11]

On October 28, 2005, Davis filed this lawsuit alleging that her termination: (1) was racially
motivated in violation of Section 1981, (2) was in retaliation for exercising her rights to seek FMLA
leave, and (3) was for the purpose of preventing her from receiving full retirement benefits under
Albany's pension plan in violation of ERISA. (*See* Doc. # 33, Pl.'s First Am. Compl.) Davis also
alleges that she was denied disability benefits as provided for in Albany's short-term disability plan
and long-term disability plan in violation of ERISA. (*Id*.) As stated earlier, Davis alleges state law

---

[9] Ultimately, Davis received Social Security disability benefits and was declared disabled retroactively to August 21, 2003.

[10] (Doc. # 26, Ex. 2, Pl.'s Dep. 338-348.)

[11] Oddly enough, Davis' deposition testimony indicates that she was terminated on August 21, 2003, *and* on October 29, 2003. (Pl.'s Dep. 142, 150, 178, 179, 180, 228.) Because it is undisputed that Davis worked periodically for Albany after August 21, 2003, for the purpose of this Memorandum Opinion the court relies upon her testimony asserting that she was terminated on October 29, 2003. Davis' testimony, however, is hotly disputed by the defendants as they claim that Davis resigned from her employment. (Doc. # 26, Ex. 1, Pl.'s Dep., Exs. 10 & 11; Doc. # 26, Ex. 3, Bryant Decl. ¶ 4.)

claims of negligent retention, negligence, intentional infliction of emotional distress, respondeat superior, assault and battery,  and negligent hiring, supervision, and training.  (*Id*.)

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

*A.      Rule 56(f) Affidavit*

At the outset, the court notes that in response to the motions for summary judgment, Davis' counsel submitted an affidavit from Vicky U. Toles ("Toles"), one of Davis' attorneys, pursuant to Rule 56(f) of the Alabama Rules of Civil Procedure.[12]  (Doc. # 37, Ex. A; Doc. # 38, Ex. A.)  In this affidavit, Toles asserts that she has "not had an opportunity to adequately depose defendant thereby placing her at a disadvantage for filing a response to the motion[s] for summary judgment."  (*Id*.)

The court is not persuaded by Toles' affidavit.  In response to the motions for the summary judgment, neither Toles nor her co-counsel Trina S. Williams, requested further discovery or a continuance.  Moreover, the responsive briefs did not make a single reference to Toles' affidavit and did not contain any argument that Davis cannot "present by affidavit [or other means] facts essential to justify [her] opposition" to the motions for summary judgment.  *See* Fed. R. Civ. P. 56(f).[13]

---

[12]  The court assumes that Toles relies upon the Alabama Rules of Civil Procedure in error as the Federal Rules of Civil Procedure apply to this action.

[13]  Federal Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons

Rather, in the responsive briefs, Davis' counsel argue that Davis has put forth sufficient evidence on her claims to establish that genuine issues of material facts exist, thus summary judgment "is inapplicable in this instance." (Docs. # 37 & 38.)  Hence, Davis' counsel fail to argue or establish that they cannot present facts essential to justify Davis' opposition to the summary judgment motions.  Accordingly, the court finds that Davis is not entitled to Rule 56(f) relief.

Alternatively, the court finds that, to the extent that a Rule 56(f) issue was properly presented, Davis' counsel abandoned it by failing to raise it during the pretrial conference.  At the pretrial conference, Davis' counsel did not raise a Rule 56(f) issue to the court and, to the contrary, indicated that there were no discovery issues or discovery disputes existing in the case.  (*See* Doc. # 46.) Consequently, the court concludes that any claim for Rule 56(f) relief asserted by Davis' counsel has been abandoned.

**B.    *Davis' Federal Claims***

**1.    *Section 1981 Claim***

Davis, an African-American female, alleges that her employment with Albany was terminated due to her race in violation of Section 1981. (Doc. # 33, Pl.'s First Am. Compl., ¶ 29.)[14] Section 1981 protects an individual's right to be free from racial discrimination in the "making, performance, modification, enforcement, and termination of contracts" and prohibits employment

---

stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

[14] The parties present argument on a disparate treatment claim; however Davis did not allege such a claim in her First Amended Complaint. (*See* Doc. # 33, Pl.'s First Am. Compl.)  Accordingly, the court pretermits discussion of  claims which are not properly before it.

discrimination based on race. *Austin v. City of Montgomery*, 2006 WL 2219726, * 1 (11th Cir. 2006) (unpublished) (citing 42 U.S.C. § 1981);[15] *see Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269-70 (11th Cir. 2004). An employee bringing a discrimination claim under Section 1981 must prove intentional discrimination by the employer through one of two methods: presenting direct evidence of discriminatory intent, or presenting circumstantial evidence of discrimination by satisfying the four-prong analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. Of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981).[16] Because Davis has not presented any direct evidence to support her claim of discrimination, the court will only address her circumstantial evidence of race discrimination.

First, the plaintiff in a Section 1981 case carries the burden of establishing a *prima facie* case of discrimination. In order to establish a *prima facie* case of discriminatory discharge on account of race, a plaintiff must show: (1) that she belongs to a racial minority; (2) she was qualified to do her job; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly-situated employees outside her classification more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If a plaintiff establishes a *prima facie* case, the burden then shifts to

---

[15] Specifically, Section 1981 provides, in relevant part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens. . . .
>
> ***
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

[16] Although these cases address discrimination claims under Title VII, courts routinely apply Title VII case law to discrimination claims brought under Section 1981. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (noting that both Section 1981 and Title VII have the same requirements of proof and use the same analytical framework).

the employer, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is exceedingly light." *Meeks v. Computer Assoc. Int'l.,* 15 F.3d 1013, 1021 (11th Cir. 1994). Once the employer proffers a legitimate, non-discriminatory reason, the employee, in order to survive summary judgment, "has to come forward with evidence, including the previously produced evidence establishing a *prima facie* case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). Moreover, the ultimate burden of persuasion rests on the employee in cases involving merely circumstantial evidence. *Burdine,* 450 U.S. at 253. "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000).

Applying the *McDonnell Douglas* burden-shifting framework to the evidence submitted by the parties, the court finds that Davis' Section 1981 claim fails. First, the court assumes for the purpose of this opinion that Davis has established a *prima facie* case of discriminatory discharge. Second, considering Davis' deposition testimony, which was presented by Albany and Johnston, Albany terminated Davis' employment because she could not perform her job duties.[17] (Doc. # 26, Ex. 1, Pl.'s Dep. 143; Ex. 2, Pl.'s Dep. 348.) The court finds this reason for termination to be legitimate and non-discriminatory. Third, Davis failed to present any evidence contesting the veracity of the proffered reason for her termination. Davis also failed to present any evidence

---

[17] Viewing the evidence in the light most favorable to Davis, the court assumes that she was terminated from her employment despite the defendants' evidence that Davis resigned from her employment. In that vein, the court relies upon Davis' stated reason for Albany's termination of her employment.

indicating that the stated reason for her termination was pretextual or that her termination was

motivated by race. To the contrary, Davis testified that she was not discharged by Albany because

of her race. (Doc. # 26, Ex. 1, Pl.'s Dep. 143.) Accordingly, the court finds that Davis has failed

to satisfy her burden on summary judgment and, as a result, concludes that Albany and Johnston are

entitled to summary judgment on Davis' Section 1981 claim.

     2.     *FMLA Claim*

Davis alleges that she was terminated in retaliation for exercising her right to seek FMLA

leave. (Doc. # 33, Pl.'s First Am. Compl., ¶ 44.) The FMLA grants an eligible employee the right

to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons,

including "[b]ecause of a serious health condition that makes the employee unable to perform the

functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Act creates a private

right of action to seek equitable relief and money damages against employers who "interfere with

restrain, or deny, the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. §§ 2615(a)(1),

2617(a). *See Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003).[18]

The Eleventh Circuit has recognized that the FMLA creates two types of claims: interference

claims, in which an employee asserts that her employer denied or otherwise interfered with her

substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an

employee asserts that her employer discriminated against her because she engaged in activity

---

[18] The FMLA permits employers to require employees on leave "to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5). Moreover, employers are entitled to require that the need for leave be supported by the certification of a health care provider. 29 U.S.C. § 2614(b)(3).

protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2).[19]  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).  In this case, Davis has only alleged a retaliation claim.

Where a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, the court must apply the *McDonnell Douglas* burden-shifting framework.  *Strickland*, 239 F.3d at 1207; *Hurlbert*, 439 F.3d at 1297.  To succeed on a FMLA retaliation claim, an employee must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Strickland,* 239 F.3d at 1207.  In order to establish a *prima facie* case of FMLA retaliation, the plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  *Hurlbert*, 439 F.3d at 1297.

In the instant case, Davis has failed to present any evidence in support of her *prima facie* case.  Davis testified that she was never denied FMLA leave when her request was supported by medical certification as required by Albany's policy.  (Doc. # 26, Ex. 2, Pl.'s Dep. 247.)  In addition, there is no evidence of a causal connection between Davis' FMLA leave and her alleged termination because Davis had not taken FMLA leave since May 19, 2003.  (*Id*. at Ex. 3, Pl.'s Dep., Ex. 9.)  This five months proximity is insufficient to show causation.  *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (noting that a three month proximity between protected FMLA activity and an adverse employment action was insufficient to create a jury issue on causation).  Furthermore, at the

---

[19]  The Eleventh Circuit has clarified that "[w]hile the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 n.9 (11th Cir. 2001).

time that Davis was allegedly terminated, she had not requested FMLA leave and could not provide

certification from a health care provider that she needed FMLA leave[20] as all of her treating

physicians had approved her return to work. (Doc. # 26, Ex. 2, Pl.'s Dep. 339) ("My personal

doctors [said] that . . . I could return to work" . . . [and the worker's compensation physicians] said

I could return to work.")[21] Accordingly, the court finds that Davis' FMLA retaliation claim fails and

does not survive summary judgment.

      3.      *ERISA Claims*

Davis alleges that she was discharged in violation of ERISA for the purpose of preventing

her from receiving full retirement benefits under Albany's pension plan. (Doc. # 33, Pl.'s First Am.

Compl., ¶ 57.) Davis also alleges that Albany and Johnston failed to pay the disability benefits as

provided for in Albany's short-term disability plan and long-term disability plan in violation of

ERISA. (*Id.* at ¶ 64.)

Section 510 of ERISA prohibits employers from discharging employees for the purpose of

preventing the employee from receiving additional vested benefits. 29 U.S.C. § 1140. Section 510

makes it unlawful to "discharge . . . a participant or beneficiary for exercising any right to which he

is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with

the attainment of any right to which such participant may become entitled." (*Id.*) "The ultimate

inquiry under this statutory provision is whether the employer had the specific intent to interfere with

the employee's ERISA rights." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir. 1993).

---

[20] *See* 29 U.S.C. § 2614(b)(3).

[21] Based upon this deposition testimony from Davis, the court questions whether her FMLA retaliation claim is properly before the court. The Eleventh Circuit has held that an individual cannot bring a FLMA retaliation claim based on "an attempt to exercise a right that is not provided by [the] FMLA," such as "the right to leave before one becomes eligible therefor." *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004).

A plaintiff may satisfy this burden "by showing direct proof of discrimination or by satisfying the scheme for circumstantial evidence established by *McDonnell Douglas.*" *Id*. at 1223.

Here, the court finds that the evidence submitted by the parties fails to show that Davis has established a *prima facie* case. "In the context of a § 510 claim alleging unlawful discharge, a plaintiff may establish a *prima facie* case of discrimination by showing (1) that [she] is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination." *Clark*, 990 F.2d at 1223. The undisputed evidence establishes that Davis has not been denied retirement benefits, short-term disability benefits, or long-term disability benefits. According to Davis' deposition testimony, no Albany employee denied her retirement benefits.[22] (Doc. # 26, Ex. 1, Pl.'s Dep. 141.) The evidence also establishes that Davis was never denied long-term disability benefits because, according to her deposition testimony, she never applied for long-term disability benefits. (*Id*. at 139.) Furthermore, Davis testified that she was never denied short-term disability benefits as she received short-term disability benefits every time she applied for them. (*Id*. at 139-141.) Finally, Davis has failed to introduce any evidence that would suggest that her alleged termination was motivated by a desire to interfere with her ERISA rights.

Notably, in opposition to summary judgment, Davis merely argues – without presenting any supporting evidence – that her termination "directly affected her benefits under the plan[s] for pension, short-term disability, and long-term disability." (Docs. # 37 & 38 at 14.) However, such conclusory arguments alone are insufficient to withstand summary judgment. *See Celotex,* 477 U.S.

---

[22] The evidence submitted to the court indicates that Davis is entitled to a vested separation benefit and can elect to begin receiving her benefit at age 55. (Doc. # 26, Ex. 2, Pl.'s Dep., Ex. 14.)

at 324 (noting that Rule 56(e) requires that the nonmoving party go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial"); *Clark*, 990 F.2d at 1224 (noting that a plaintiff "cannot establish a *prima facie* case under Section 510 merely by showing that, as a result of the termination, she was deprived of the opportunity to accrue more benefits"). Accordingly, because Davis failed to carry her burden on summary judgment, the court concludes that Albany and Johnston are entitled to summary judgment on Davis' ERISA claims.

C.    *Davis' State Law Claims*

As aforementioned, Davis also brings state law claims of assault and battery, negligent retention, negligence, intentional infliction of emotional distress, respondeat superior, and negligent hiring, supervision and training against Albany and Johnston.  In response to the motions for summary judgment, Davis stated that "[she] can not substantiate her claim and voluntarily dismisses the claim for assault and battery."  (Docs. # 38 at 15 & 37 at 15.)  Accordingly, the court finds that Davis' assault and battery claims are due to be dismissed.

Moreover, the court declines to retain supplemental jurisdiction over the remaining state law claims and will dismiss them without prejudice.  *See* 28 U.S.C. § 1367 (c)(3) (court may decline to exercise such supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir. 1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial).  Accordingly, the court finds that the state law claims remaining in this action are best resolved by the Alabama state courts.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.  Defendants' motions for summary judgment (Docs. # 27 & 28) are hereby
    GRANTED in relation to Plaintiff's state law claims for assault and battery, and
    Plaintiff's federal claims under Section 1981, the FMLA, and ERISA.

2.  Plaintiff's state law claims of negligent retention, negligence, intentional infliction
    of emotional distress, respondeat superior, and negligent hiring, supervision and
    training against Defendants are DISMISSED WITHOUT PREJUDICE.

3.  The Clerk of the Court is hereby DIRECTED to remove the above-styled case from
    the November 6, 2006, trial docket.

4.  Albany's Unopposed Motion to Continue Trial (Doc. # 55) is DENIED as moot.

A separate final judgment will be entered in accordance with this Memorandum Opinion and
Order.

DONE this 17th day of October, 2006.

                       /s/  W. Keith Watkins
                       UNITED STATES DISTRICT JUDGE